## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

THERESA SANCHEZ and
DESTINY LEE,
              Plaintiffs,

v.                                           No. 14-CV-0433 MCA/RHS

STATE FARM FIRE AND CASUALTY
COMPANY; ANDREW FELDER;
REGGIE POPE; and JOHN DOE,

                  Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants Andrew Felder ("Felder") and Reginald Pope's ("Pope") Motion to Dismiss for Lack of Personal Jurisdiction and Supporting Memorandum of Law ("Motion to Dismiss") [Doc. 5]. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion.

## BACKGROUND

Plaintiffs Theresa Sanchez ("Sanchez") and Destiny Lee (collectively, "Plaintiffs") filed their complaint on April 9, 2014, in the First Judicial District Court, County of Santa Fe, State of New Mexico. [Doc. 1 at 6-24]. Plaintiffs allege that Defendant State Farm Fire and Casualty Company ("State Farm") breached its contract of insurance coverage, breached the covenant of good faith and fair dealing, acted in bad faith, violated the Unfair Claims Practices Act, and violated the Unfair Trade Practices Act, that Defendants State Farm, Felder, and Pope were negligent and caused intentional infliction of emotional distress, and that Defendants Felder and State Farm committed the tort of fraud. [*Id.* at 10-18].

1

State Farm filed its notice of removal on May 9, 2014, asserting that the Court has diversity of citizenship jurisdiction over the complaint pursuant to 28 U.S.C. Section 1332.   State Farm maintains that it is an Illinois corporation with its principal place of business in Illinois and is a citizen and resident of the State of Illinois, that Plaintiffs are citizens and residents of the State of Tennessee, and that Defendants Felder and Pope cannot be considered in the diversity assessment because New Mexico lacks personal jurisdiction over them, Plaintiffs fraudulently joined them, and removal is proper when a court lacks personal jurisdiction over a non-diverse defendant. [Doc. 1 at 2 (citations omitted)].   On May 9, 2014, Felder and Pope filed their Motion to Dismiss in which they ask the Court to dismiss Plaintiffs' claims against them on the ground that they are not subject to personal jurisdiction in this Court.

The complaint arises from an automobile accident that occurred in New Mexico on December 22, 2013.   [*Id.* at 7, ¶ 7].   The complaint contains the following allegations.   Plaintiffs were "abruptly struck by a passing semi-truck driven by Defendant John Doe," which caused "plaintiffs[] to lose control of their vehicle and collide into [a] cement barrier"; the "semi-truck driven by Defendant John Doe pulled over to [the] right side of the road then fled the area shortly after."   [*Id.* at 7-8, ¶ 7].   Plaintiffs' vehicle sustained heavy front-end damage and was disabled and towed from the scene.   [*Id.* at 8, ¶ 7].

Plaintiffs purchased an automobile insurance policy from Defendants State Farm and Felder that was in effect on the date of the accident.   [*Id.* at 7, ¶ 6].   Plaintiffs are, and were at the time they purchased the insurance, residents of the State of Tennessee.   Plaintiffs submitted a claim to State Farm under the uninsured motorist coverage provisions of their policy, and Plaintiffs allege that the claim was handled and overseen by Defendant Pope.   [*Id.* at 9, ¶ 22].

In support of their Motion to Dismiss, Defendants Felder and Pope each submit affidavits

in which they assert the following facts.   Felder and Pope are residents of Tennessee and neither Felder nor Pope has been served with process in New Mexico.   [*Id.* at 20-21, ¶¶ 2, 9; *id.* at 22-23, ¶¶ 2, 9].   Neither Felder nor Pope has been to New Mexico, [*id.* at 20, ¶ 3; *id.* at 22, ¶ 3], owns property in New Mexico or has any economic connections or ties to New Mexico, [*id.* at 20, ¶ 5; *id.* at 22, ¶ 5], has an office, telephone number, directory listing, address, or bank account in New Mexico, [*id.* at 20, ¶ 6; *id.* at 23, ¶ 6], or pays taxes to the State of New Mexico, [*id.* at 20, ¶ 7; *id.* at 23, ¶ 7].   Felder and Pope do not, nor have they ever, conducted any business in New Mexico. [*Id.* at 21, ¶ 8; *id.* at 23, ¶ 8].   Felder's and Pope's contacts with the State of New Mexico after the filing of the complaint are limited to their dealings with their law firm Miller Stratvert P.A., for the purposes of establishing that New Mexico does not have personal jurisdiction over them.   [*Id.* at 21, ¶ 14; *id.* at 23, ¶ 14].

Pope asserts that he has had no contacts with the State of New Mexico relating in any way to the matters alleged in the complaint other than a reservation of rights letter that was sent by State Farm under his signature to Plaintiffs' New Mexico counsel.   [Doc. 1 at 23, ¶ 11].   Felder asserts that he has had no contacts with the State of New Mexico relating to the matters alleged in the complaint other than that he spoke to Plaintiff Sanchez approximately eight times over the telephone and during some or all of these calls Sanchez may have been visiting New Mexico. [Doc. 12 at 25, ¶ 8].   During these calls, Sanchez informed Felder she was in an automobile accident and Felder provided Sanchez with telephone numbers to the State Farm claims department and to a field adjuster.

Plaintiffs submit as their sole evidence in opposition to the Motion to Dismiss, the affidavit of Robert Koeblitz ("Koeblitz"), who is their attorney at Bleus & Associates, a law firm located in Albuquerque, New Mexico.   Koeblitz attests that his assertions are "made from my own personal

3

knowledge," [Doc. 9 at 9], that Bleus & Associates has "monitored State Farm's handling of Plaintiff Sanchez' property damage claim," [*id.* at 11, ¶ 10], and that "Defendant Pope and Defendant Felder were both intimately involved in the New Mexico claims handing process," [*id.* at 12, ¶ 16].

In attempt to establish Defendant Felder's contacts with New Mexico, Koeblitz asserts that Felder is the agent who sold Plaintiff Sanchez the insurance policy, that "Bleus & Associates, LLC has had multiple communications with the Andrew Felder State Farm Agency, through Defendant Felder and Jami Peveler," and that the "various documents received from State Farm and Defendant Felder designate him as the 'servicing agent' for Plaintiffs."   [*Id.* at 11, ¶ 9].   Koeblitz attests that Plaintiff Sanchez submitted her insurance claim to Felder directly and that,

> [b]ased on the various communications received, Defendant Felder was required to and did investigate the nature of Plaintiffs' New Mexico property damage loss, including the procurement of local repair estimates and to ensure that the full amount of Plaintiff Sanchez' loan balance was paid.  Defendant Felder administered, or at least assisted in the administration of, Plaintiffs' loss in his capacity as "servicing agent."

[*Id.* at 11, ¶ 10].   Koeblitz further asserts that "Plaintiff's damaged vehicle was towed to her mother's residence in Albuquerque," and that "Felder called Plaintiff Sanchez' mother . . . and coordinated vehicle repair estimates, appraisals, the vehicle pick-up and liquidation, including the salvage valuation."   [*Id.* at 12, ¶ 11].   Koeblitz attests that "Felder became increasingly involved in the administration because State Farm's initial property damage settlement offer was less than the loan amount on [the] vehicle," [*id.* at 12, ¶ 12], and that "Felder assisted Plaintiff Sanchez as she negotiated with the New Mexico vehicle liquidator, State Farm and Wells Fargo[, the lien holder on Sanchez' vehicle,] to procure the full GAP amount and facilitated the payment of Plaintiff Sanchez' New Mexico property damage claim," [*id.* at 12, ¶ 14].

In attempt to establish Defendant Pope's contacts with New Mexico, Koeblitz attests that "State Farm has had several adjusters contact our firm, including . . . Pope, . . . with respect to the handling of this claim."   [*Id.* at 9, ¶ 3].   Koeblitz further attests that "Pope's communications state he is the 'team manager' and ostensibly in charge of the investigation, management and administration of Plaintiffs' New Mexico automobile claim."   [*Id.* at 10, ¶ 4].   Koeblitz further asserts, "My communications with Defendant Pope include the receipt of a January 22, 2014 reservation of rights letter to Bleus & Associates LLC."   [*Id.* at 10, ¶ 5].   Koeblitz further attests, "Bleus & Associates, LLC has had additional communications with Defendant Pope, and based on information provided understood that Mr. Pope was the claims adjuster handling the Plaintiffs['] matter who performed the initial review, analysis, investigation, administration, management and evaluation of Plaintiffs' claim."   [*Id.* at 10, ¶ 6].   Finally, Koeblitz attests that, "[b]ased upon the Reservation of Rights letter . . . , it is our belief that Defendant Pope was required to and did 'investigate' Plaintiffs' New Mexico loss, investigate the nature of Plaintiffs' property damage loss . . . , coordinate the vehicle inspection with Plaintiff Sanchez' mother, procure[] New Mexico repair estimate[s], determine[] the vehicle was a total loss, liquidate[] the vehicle through a local New Mexico salvage yard, investigate[] the New Mexico accident scene, interview[] witnesses . . . , familiarize[] himself with the New Mexico law governing claims administration and identif[y] whether State Farm had a viable subrogation action."   [*Id.* at 10-11, ¶ 7].   Koeblitz concludes that these failures of Pope's "form the gravamen of [Plaintiffs'] claim which is, that Defendant Pope's negligence, most notably his harassment of Plaintiffs, unreasonable demands and reliance o[n] unenforceable policy provisions is per se insurance company bad faith."   [*Id.* at 11, ¶ 8].

In his second affidavit, Defendant Pope counters Koeblitz's assertions.   Pope attests that he is "not the adjustor assigned to handle and adjust Plaintiffs' loss," [Doc. 12 at 21, ¶ 2], that he

was the "team manager," [*id.* at 21, ¶ 3], that "[a]s team manager, [he] did not, nor was [he] required to investigate Plaintiffs' claim," [*id.* at 21, ¶ 4], that "[he] was not required to, and did not investigate" Plaintiffs' "New Mexico loss" or "the nature of Plaintiffs' property damage claim," [*id.* at 21, ¶¶ 5, 6], that "[he] was not required to, and did not" "coordinate the vehicle inspection with Plaintiff Sanchez' mother," "procure New Mexico repair estimates," "determine that the Sanchez vehicle was a total loss," "liquidate the Sanchez vehicle through a local New Mexico salvage yard," "investigate the New Mexico accident scene," or "identify whether State Farm had a viable subrogation action," [*id.* at 21-22, ¶¶ 7-11, 13], and that he "did not interview witnesses," [*id.* at 22, ¶ 12]. Pope further attests that he did not have "'additional communications' with Plaintiff's counsel," and that his "role in the handling of Plaintiffs' claim was strictly supervisory and all of [his] work on this file occurred in the State of Tennessee." [*Id.* at 22, ¶¶ 15, 16].

In his second affidavit, Defendant Felder also contests Koeblitz's assertions. Felder attests that he is the insurance agent that sold Plaintiffs the State Farm insurance policy at issue and that "[a]ll aspects of this sale occurred in Tennessee." [*Id.* at 24, ¶ 2]. Felder further attests that he is "designated as the 'servicing agent'" for the policy, that he "was not required to and did not investigate the nature of Plaintiffs' New Mexico property damage loss, including the procurement of local repair estimates," that he was "not required to and did not ensure that the full amount of Plaintiff Sanchez' loan balance was paid," and that he "did not nor was [he] required to coordinate repair estimates, appraisals, vehicle pick-up, liquidation and salvage valuation." [*Id.* at 24-25, ¶¶ 3-5, 7]. Felder further attests that he has "no recollection of speaking with plaintiff Sanchez' mother . . . unless on one of the occasions on which [he] called, her mother answered and [he] asked to speak to Plaintiff Sanchez," that he "spoke with Plaintiff Sanchez over the telephone approximately eight times," that "[Sanchez] informed [him] she was in a car accident and [he]

gave her telephone numbers to the State Farm claims department and a field adjustor in that area," and that Sanchez "was visiting New Mexico during some or all of these telephone communications." [*Id.* at 25, ¶¶ 6, 8]. Felder further attests that he was "not required to and did not become increasingly involved in the administration of the claim," and that he was "not required to and did not assist plaintiff as she negotiated with the New Mexico vehicle liquidator, State Farm and Wells Fargo in order to procure the full GAP amount nor to facilitate the payment of Plaintiffs New Mexico property damage claim." [*Id.* at 25, ¶¶ 9, 10]. Felder also asserts that he "did not send any letters or other documents to plaintiffs' attorney's office" and that he does not recall speaking with Plaintiffs' attorney's office. [*Id.* at 25, ¶¶ 11, 12]. Rather, Felder attests that his "only involvement with this claim, and in the claims process in general, was to direct the insured to the claims department." [*Id.* at 25, ¶ 13].

## **STANDARD**

Motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(2) test a plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction. The Rule 12(b)(2) standard governing a motion to dismiss for lack of personal jurisdiction is well established.

When a defendant challenges the court's jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction exists. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations omitted). In the preliminary stages of litigation, this burden is "light," and prior to trial the "plaintiff is only required to establish a prima facie showing of [personal] jurisdiction." *Doe v. Nat'l Med. Serv.*, 974 F.2d 143, 145 (10th Cir. 1992). The plaintiff may make the required prima facie showing by coming forward with facts, via affidavit or other written materials, that would support jurisdiction

over the defendant if true.  *See OMI Holdings v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).   Only the well-pled facts of a plaintiff's complaint, however, as opposed to mere conclusory allegations in pleadings or other materials, must be accepted as true.  *See Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).   Moreover, a plaintiff's jurisdictional allegations are not automatically accepted as true when contradicted by affidavit, although if the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor.  *See Wenz*, 55 F.3d at 1505.

## DISCUSSION

Defendants Felder and Pope argue that the Court should dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(2) because the Court lacks personal jurisdiction over them.   Felder contends that, prior to Plaintiffs' lawsuit, his sole contacts with New Mexico were limited to approximately eight telephone conversations with Plaintiff Sanchez during which Sanchez may have been visiting New Mexico on some or all of the calls.   Pope maintains that, prior to Plaintiffs' lawsuit, his sole contact with New Mexico was a reservation of rights letter that was sent by State Farm under his signature to Plaintiffs' counsel in New Mexico.   Although, to satisfy their prima facie showing of personal jurisdiction over Defendants, Plaintiffs point to the affidavit of their attorney Robert Koeblitz, in which he asserts that Felder and Pope engaged in additional contacts with New Mexico, Defendants contend that the Court must disregard these facts because they are not based upon personal knowledge.   The Court first considers Defendants' evidentiary challenge to the affidavit and next determines whether, on the facts properly before the Court, it has personal jurisdiction over Defendants.

I.      The Court Strikes Attestations Not Based Upon Personal Knowledge.

Affidavits submitted in support of or in opposition to a motion to dismiss for lack of personal jurisdiction must comply with the requirements of Federal Rule of Civil Procedure 56(c)(4).  *See FDIC v. Oaklawn Apts.*, 959 F.2d 170, 175 n.6 (10th Cir. 1992); *Encore Productions, Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1115 (D. Colo. 1999).  Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

Defendants Felder and Pope challenge the Koeblitz affidavit on the ground that Koeblitz's attestations are not based upon personal knowledge.  "[G]enerally Rule 56[(c)(4)]'s requirements of personal knowledge and competence to testify may be inferred if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge."  *Told v. Tig Premier Ins. Co*., 149 F. App'x 722, 725-26 (10th Cir. 2005) (citation omitted).  "[A] mere statement of belief" in an affidavit is not sufficient to satisfy Rule 56's requirement that "only statements 'made on personal knowledge' will [suffice]."  *Tavery v. U.S.*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994) (disregarding attestation in affidavit prefaced with "I do not believe") (citing *Automatic Radio Mfg. Co. v. Hazeltine Research*, 339 U.S. 827, 831 (1950)) (holding that affidavit in support of motion for summary judgment made on information and belief does not comport with Rule 56[(c)(4)]); *Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949) ("Belief, no matter how sincere, is not equivalent to knowledge.") (additional citations omitted).[1]  In addition, if it is clear

---

[1]  *See also Told*, 149 F. App'x at 725 (striking verification because, although it stated that the attester had "'personal knowledge of the facts of the underlying dispute,'" it thereafter stated that certain facts were "'true and correct to the best of my knowledge and information,'" and "[i]nformation and belief have no place in an affidavit" under Rule 56); *Bruner-McMahon v. Hinshaw*, 846 F. Supp. 2d 1177, 1186 n.6 (D. Kan. 2012) (holding that the affidavit was

from the context that an assertion in an affidavit is not supported by personal knowledge, then a court should disregard the statement.   *See Told*, 149 F. App'x at 726.   For example, an affidavit "completely devoid of particularity and detail" and "riddled with . . . information that is clearly outside [the attester's] personal knowledge," does not comply with the personal knowledge requirement set forth in Rule 56(c)(4).   *Id.* at 726 (internal quotation marks and citation omitted).

The Court, applying these standards, holds that the bulk of Koeblitz's attestations in his affidavit are not based upon personal knowledge.   Because these attestations violate Federal Rule of Civil Procedure 56(c)(4), and affidavits considered on a Rule 12(b)(2) motion to dismiss must comply with this rule, *see FDIC*, 959 F.2d at 175 n.6, the Court strikes the assertions.

A.   The Court Strikes the Attestations Regarding Felder in Paragraphs 9, 10, 11, 12, and 14.

In paragraph ten of his affidavit, Koeblitz asserts that Plaintiff Sanchez submitted her insurance claim to Felder directly and that:

> [b]ased on the various communications received, Defendant Felder was required to and did investigate the nature of Plaintiffs' New Mexico property damage loss, including the procurement of local repair estimates and to ensure that the full amount of Plaintiff Sanchez' loan balance was paid.   Defendant Felder administered, or at least assisted in the administration of, Plaintiffs' loss in his capacity as "servicing agent."

[Doc. 9 at 11, ¶ 10].   This vague assertion indicates that it is "based on the various communications received" but does not specify that it was Koeblitz who received these communications.   Moreover, if it was Koeblitz who received the communications, the assertion does not explain how the communications conveyed that "Felder was required to and did

---

"deficient" under Rule 56 because the affiant "states that the information in his affidavit is 'true in substance and in fact to my best information and belief'" and "[a]ffidavits . . . must be made on personal knowledge) (citing Fed. R. Civ. P. 56(c)(4)), *aff'd*, 566 F. App'x 628 (10th Cir. 2014).

investigate" Plaintiffs' New Mexico property loss or how they conveyed that Felder administered or assisted in the administration of the loss.   That the language suggests that the recipient of the communication—whomever that might have been—concluded that Felder undertook these activities "based on the various communications received," adds a layer of ambiguity because it is not clear whether the recipient reached the conclusion from his or her own personal knowledge or whether the recipient reached the conclusion from the knowledge of the person from whom the communication was received.   Moreover, that the assertion indicates that it is based upon Felder's "capacity as 'servicing agent'" further suggests that it is not based upon personal knowledge. [*Id.*].

The Tenth Circuit has held that the requirement of personal knowledge can be inferred but only if it is clear that the affiant is testifying from personal knowledge.   *See Told*, 149 F. App'x at 725-26.   Because the affidavit is vague and the basis of Koeblitz's knowledge is not clear, the Court will not infer personal knowledge.   Plaintiffs were required to lay the necessary foundation to enable the Court to determine that the basis of Koeblitz's knowledge is personal.   Plaintiffs failed to lay this foundation.   Accordingly, the Court strikes the paragraph for failure to comply with the personal knowledge requirement set forth in Rule 56(c)(4).

The Court likewise concludes that the facts asserted in paragraphs eleven, twelve, and fourteen of Koeblitz's affidavit are not supported by personal knowledge.   Koeblitz asserts in paragraph eleven that "Plaintiff's damaged vehicle was towed to her mother's residence in Albuquerque," and that "Felder called Plaintiff Sanchez' mother . . . and coordinated vehicle repair estimates, appraisals, the vehicle pick-up and liquidation."   [Doc. 9 at 12, ¶ 11].   Koeblitz attests in paragraph twelve that "Felder became increasingly involved in the administration because State Farm's initial property damage settlement offer was less than the loan amount on [the] vehicle,"

[*id.* at 12, ¶ 12].   Koeblitz asserts in paragraph fourteen that "Felder assisted Plaintiff Sanchez as she negotiated with the New Mexico vehicle liquidator, State Farm and Wells Fargo to procure the full GAP amount and facilitated the payment of Plaintiff Sanchez' New Mexico property damage claim."   [*Id.* at 12, ¶ 14].   Koeblitz does not explain how these attestations are based upon his personal knowledge, and because it is not clear from the context of the affidavit that these attestations are based upon personal knowledge, the Court will not infer it.   *Cf. Told*, 149 F. App'x at 725-26.   Rule 56(c)(4) required Plaintiffs to lay the necessary foundation to establish that Koeblitz's assertions were based upon his personal knowledge.   Plaintiffs failed to do so. Accordingly, the Court strikes these paragraphs.

In paragraph nine of his affidavit, Koeblitz asserts, "Bleus & Associates, LLC has had multiple communications with the Andrew Felder State Farm Agency, through Defendant Felder and Jami Peveler."   [Doc. 9 at 11, ¶ 9].   Given the context of Koeblitz's affidavit, it is not clear that Koeblitz had personal knowledge of the facts asserted.   Thus, the Court will not infer that it was Koeblitz at Bleus & Associates who had "multiple communications with . . . Felder and . . . Peveler."   [*Id.*].   Indeed, because Rule 56(c)(4) required Plaintiffs to establish that Koeblitz was testifying from his own personal knowledge, if it was Koeblitz himself who had one or more communications with Felder, Plaintiffs should have ensured that Koeblitz attested that it was he in particular who—and not "Bleus & Associates" generally which—communicated with Felder. Because Koeblitz did not do so, the Court disregards the assertions in paragraph nine.

B.   The Court Strikes the Attestations Regarding Pope in Paragraphs 4, 6, and 7.

In paragraph four of his affidavit, Koeblitz attests, "Pope's communications state he is the 'team manager' and ostensibly in charge of the investigation, management and administration of Plaintiffs' New Mexico automobile claim."   [Doc. 9 at 10, ¶ 4].   The Court concludes that the

references to Pope's "title" and the use of the word "ostensibly" suggest that the portion of paragraph four following the word "manager" is not based upon personal knowledge.   The language suggests that Koeblitz is asserting, based upon Pope's title of "team manager," that Pope was in charge of the investigation, management and administration of Plaintiffs' New Mexico automobile claim.   [*Id.*].   Moreover, the use of the word "ostensibly" implies that Koeblitz's assertion is based not upon personal knowledge but rather upon the title's outward appearance. Thus, the affidavit is not clear and the Court will not infer personal knowledge in the absence of a context suggesting personal knowledge.   *Cf. Told*, 149 F. App'x at 725-26.   Plaintiffs were required to ensure that Koeblitz laid the foundation necessary for the Court to ascertain that Koeblitz's testimony was based on personal knowledge.   Because paragraph four does not contain these facts, the Court strikes the language in paragraph four following the word "manager" for failure to comply with Rule 56(c)(4).

In paragraph six of his affidavit, Koeblitz attests, "Bleus & Associates, LLC has had additional communications with Defendant Pope, and based on information provided understood that Mr. Pope was the claims adjuster handling the Plaintiffs['] matter who performed the initial review, analysis, investigation, administration, management and evaluation of Plaintiffs' claim." [Doc. 9 at 10, ¶ 6].   If Koeblitz himself was a participant in these "additional communications" with Pope, Koeblitz should have attested that he in particular—and not Bleus & Associates in general—had these communications.   Koeblitz declined to do so thus leaving it entirely possible that some other attorney or employee—and not Koeblitz—at Bleus & Associates participated in the communication.    Furthermore, Koeblitz's attestation that whomever received the communication "understood" that Pope undertook these activities "based on information provided" injects another layer of ambiguity because it is not clear that the understanding arose

from personal knowledge instead of "information provided" by some third party.   Because it is not clear from the context of the affidavit that Koeblitz was testifying from personal knowledge, the Court declines to infer personal knowledge.   Plaintiffs were required by Rule 56(c)(4) to establish that Koeblitz himself had personal knowledge of the "additional communications." Koeblitz failed to provide the foundation necessary to establish how he had personal knowledge that Pope was the claims adjuster or how he concluded that Pope performed the initial review, analysis, investigation, administration, or management of Plaintiffs' claim.   Due to these omissions, the Court strikes paragraph six.

In paragraph seven, Koeblitz attests that "it is our belief that Defendant Pope was required to and did 'investigate' Plaintiffs' New Mexico loss, investigate the nature of Plaintiffs' property damage loss . . . coordinate the vehicle inspection with Plaintiff Sanchez' mother, procure[] New Mexico repair estimates, determine[] the vehicle was a total loss, liquidate[] the vehicle through a local New Mexico salvage yard, investigate[] the New Mexico accident scene, interview[] witnesses . . . , familiarize[] himself with the New Mexico law governing claims administration and identif[y] whether State Farm had a viable subrogation action."   [*Id.* at 10-11, ¶ 7].   As the Tenth Circuit repeatedly has held, "[A] mere statement of belief" in an affidavit is not sufficient to satisfy Rule 56."   *Tavery*, 32 F.3d at 1427 n.4 ; *see Told*, 149 F. App'x at 725-26.   Therefore, because the content of paragraph seven is premised not on personal knowledge but rather on Koeblitz's belief, the Court strikes that paragraph in its entirety.   *Cf. Tavery*, 32 F.3d at 1427 n.4 (holding that statements of "mere belief" must be disregarded).   Plaintiff's motion is denied as to Plaintiff's request that the Court declare the Board's personal attacks policy unconstitutional as applied to Plaintiff.

II.   <u>The Court Grants the Motion to Dismiss Because It Lacks Personal Jurisdiction Over</u>

<u>Felder and Pope</u>.

Defendants Felder and Pope move to dismiss Plaintiffs' claims against them pursuant to Federal Rule of Civil Procedure 12(b)(2) on the ground that the Court lacks personal jurisdiction over them.   Because Defendants have challenged the Court's jurisdiction and identified facts that contradict Plaintiffs' jurisdictional allegations in the complaint, Plaintiffs were required to make a prima facie showing of personal jurisdiction by coming forward with facts, via affidavit or other written materials, that satisfy the requirements of Rule 56(c)(4) and that would support jurisdiction if true.  *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *OMI Holdings v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998); *FDIC v. Oaklawn Apts.*, 959 F.2d 170, 175 n.6 (10th Cir. 1992).

Although Plaintiffs point to Koeblitz's affidavit in which he asserts facts that controvert Defendants' assertions of limited contact with New Mexico, the Court has struck these facts because the face of the affidavit does not establish that the facts are supported by personal knowledge as required by Rule 56(c)(4) and the Court will not infer personal knowledge where an affidavit lacks detail, is vague, and contains no facts that would support an inference of personal knowledge.  *Cf. Told*, 149 F. App'x at 725-26.   Thus, Defendants' facts are uncontroverted. The question before the Court, therefore, is whether, on Defendants' facts, the Court has personal jurisdiction over Felder and Pope.

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (citation omitted); *see also World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 291 (1980) (holding that the Fourteenth

Amendment's Due Process Clause requires that a defendant be subject to a court's personal jurisdiction before a judgment can be rendered against it).  In New Mexico, a federal court has personal jurisdiction over a non-resident defendant only to the extent that the state's long-arm statute permits.  *See Fid. & Cas. Co. v. Philadelphia Resins. Corp.*, 766 F.2d 440, 442 (10th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

In determining whether personal jurisdiction exists over an out-of-state defendant under the long-arm statute, New Mexico courts apply a three-part test, which asks whether (1) the defendant committed an act or omission specifically set forth in the long-arm statute; (2) the plaintiff's cause of action arises out of the alleged acts or omissions; and (3) the defendant established sufficient minimum contacts with New Mexico to satisfy due process concerns.  *See Tercero v. Roman Catholic Diocese*, 48 P.3d 50, 54 (N.M. 2002) (citations omitted).   In applying this test, the analysis of whether the defendant committed an act enumerated in the long-arm statute within New Mexico merges with the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due process concerns.  *See id.* at 54-55 (citing *Telephonic, Inc. v. Rosenblum*, 543 P.2d 825, 827 (N.M. 1975) ("We have repeatedly equated the 'transaction of business' . . . with the due process standard of 'minimum contacts[.]'")) (additional citation omitted).  This is because New Mexico courts have interpreted the state's long-arm statute as being coextensive with the Fourteenth Amendment's Due Process Clause, such that if jurisdiction is permitted under the Due Process Clause, it also is authorized by the long-arm statute.  *See Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (citation omitted); *Tercero*, 48 P.3d at 54-55 (citations omitted).

The Fourteenth Amendment's Due Process Clause requires that for a court to assert personal jurisdiction over a defendant, the defendant must have (1) sufficient "minimum contacts"

with the forum state and (2) such that subjecting the defendant to the court's jurisdiction will not offend traditional conceptions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).   The "defendant's conduct and connection with the forum State [must be] such that [the defendant] should reasonably anticipate being haled into court there."   *World-Wide Volkswagen*, 444 U.S. at 297.   Because the Court holds that Plaintiffs have failed to satisfy their prima facie burden of establishing either that Defendant Felder or Defendant Pope has sufficient minimum contacts with New Mexico to support the Court's exercise of personal jurisdiction, the Court need not—and therefore does not—consider the second prong of the constitutional inquiry.

A plaintiff may satisfy the "minimum contacts" standard arising under the Due Process Clause by making a prima facie showing either that the Court may exercise general jurisdiction or specific jurisdiction over the defendant.   Plaintiffs do not argue, nor do the facts establish, whether necessary continuous and systematic contacts with New Mexico exist to give rise to general jurisdiction over Felder or Pope.[2]   Thus, the Court confines its inquiry to whether Defendants have sufficient minimum contacts with New Mexico to give rise to specific jurisdiction.

A.   Felder Lacks Sufficient Minimum Contacts with New Mexico to Support the Court's Exercise of Personal Jurisdiction Over Him.

Specific jurisdiction requires a plaintiff to show that (1) a defendant has purposely availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and

---

[2]   General jurisdiction requires a plaintiff to demonstrate that a defendant's contacts with the forum state were so pervasive as to confer personal jurisdiction by the continuous and systematic nature of the defendant's in-state activities.   *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *OMI Holdings*, 149 F.3d at 1090-91.   Plaintiffs identify no facts establishing that Felder or Pope had continuous and systematic contact with New Mexico.

protections of its laws, and (2) that the litigation results from alleged injuries that arise out of or relate to those activities.  *OMI Holdings*, 149 F.3d at 1090-91 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)).   The Court first considers whether Plaintiffs have satisfied the minimum contacts requirement of this two-part test.

In their opposition to the Motion to Dismiss, Plaintiffs argue that Defendants "misdirect the Court's attention by offering Affidavits of non-residency in an attempt to side-step jurisdiction for tortious conduct occurring in New Mexico" "under the erroneous premise that Defendants did not investigate, manage and administrate Plaintiffs' New Mexico accident claim."   [Doc. 9 at 1]. Plaintiffs argue, "[i]n reality, . . . Felder transacted business in the State of New Mexico by virtue of [his] management, investigation, supervision, administration and processing of this New Mexico accident/claim, and thus [is] subject to personal jurisdiction."   [*Id.*].

Despite these allegations, Plaintiffs have proffered no evidence properly that establishes that Felder engaged in this conduct.  Plaintiffs' sole support for their contention is Koeblitz's affidavit, and the Court has struck all of the attestations in that affidavit charging Felder with engaging in this conduct for failure to comply with Federal Rule of Civil Procedure 56(c)(4). Thus, the sole facts before the Court relevant to the question of jurisdiction are that Plaintiffs, who are residents of Tennessee, purchased a State Farm automobile insurance policy from State Farm and Felder, all aspects of the sale of the insurance occurred in Tennessee, and the policy was in effect on the date of the accident, which occurred while Plaintiffs were visiting the State of New Mexico.   The facts further establish that Felder is a resident of Tennessee, has never been to New Mexico, owns no property in New Mexico, has no economic connections or ties to New Mexico, has no office, telephone number, directory listing, address, or bank account in New Mexico, pays no taxes to the State of New Mexico, and conducts no business in New Mexico.   Moreover, Felder

did not investigate Plaintiffs' loss, did not ensure that the full amount of Sanchez's car loan balance was paid, did not coordinate repair estimates, appraisals, vehicle pick-up, liquidation, or valuation, did not increasingly become involved in the administration of Plaintiffs' claim, did not assist Sanchez as she negotiated with the vehicle liquidator, State Farm or Wells Fargo, and did not have any communications with Plaintiffs' attorney.  Felder's sole contacts with New Mexico prior to the filing of this suit are that he "spoke with Plaintiff Sanchez over the telephone approximately eight times," during these calls, "[Sanchez] informed [him] she was in a car accident and [he] gave her telephone numbers to the State Farm claims department and a field adjustor in that area," and Sanchez "was visiting New Mexico during some or all of these telephone communications."  *Supra* at 3.  It is these facts from which the Court must determine whether Felder has purposely availed himself of the privilege of conducting activities within New Mexico, thus invoking the benefits and protections of its laws.  *See OMI Holdings*, 149 F.3d at 1090-91.

The Supreme Court repeatedly has emphasized that "the constitutional touchstone" of the minimum contacts prong of the due process jurisdictional test is "whether the defendant purposefully established 'minimum contacts' in the forum State" such that he should reasonably anticipate out-of-state litigation.  *Burger King*, 471 U.S. at 474.  "'The application of [the personal availment] rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State.'"  *Id.* (quoting *Hansen v. Denckla*, 357 U.S. 235, 253 (1958)); *accord Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1419 (10th Cir. 1988).  The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or of the

'unilateral activity of another party or a third person.'"  *Burger King*, 471 U.S. at 475 (citations omitted); *accord Rambo*, 839 F.2d at 1419.  Thus, under the rule, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant," "cannot satisfy the requirement of contact with the forum State."  *Hanson*, 357 U.S. at 253; *see Rambo*, 839 F.2d at 1419 (explaining that if it is the actions of the plaintiff that establish a defendant's contact with a forum, this contact is not sufficient to confer personal jurisdiction).  "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State."  *Burger King*, 471 U.S. at 475; *accord Rambo*, 839 F.2d at 1419.  "Purposeful availment" generally requires some affirmative conduct by the defendant that allows or promotes the transaction of business within the forum state.  *See id.* at 1420 (citation omitted).

In *Rambo v. American Southern Insurance Co.*, our Tenth Circuit addressed the question whether the United States District Court in the Western District of Oklahoma had personal jurisdiction over a non-resident insurance company and non-resident claims company when the companies' sole contacts with Oklahoma were limited to eight to ten telephone calls and letters to the insureds in Oklahoma because the insureds happened to move to Oklahoma after the policy was issued and the accident occurred.  *See* 839 F.2d at 1416, 1418.  The plaintiffs ("Rambos"), who were residents of Alabama, insured their tractor-trailer truck with the defendant American Southern Insurance Co. ("American"), which was a Georgia corporation.  *See id.* at 1416.  Thereafter, the Rambos moved to Texas, and while they were living in Texas, the truck was stolen in California.  *See id.*  The Rambos filed a claim with American, and American in turn employed defendant Mid South Claim Services, Inc. ("Mid South"), a Georgia corporation, to investigate and settle the claim.  *See id.*  After the truck was stolen and the claim filed, the Rambos moved to

Oklahoma.  *See id.*   While the Ramos were living in Oklahoma, Mid South wrote several letters to the Rambos and also discussed the claim with the Rambos over the telephone, and the court assumed that these communications properly were imputed to American by virtue of Mid South's status as American's agent.  *See id.*   Although the truck ultimately was recovered, it was damaged and the Rambos were unhappy with the quality and extent of the repairs; thus, they filed suit against American and Mid South alleging breach of contract and failure to deal in good faith. *See id.*  American and Mid South appeared specially, objecting to the court's jurisdiction over them and filing motions to dismiss.  *See id.*   Each defendant filed an affidavit asserting that it had no business relationship with the State of Oklahoma, including no office, no employees, no property, and, in short, nothing constituting a presence or contact in the forum state.  *See id.*   In response, the Rambos offered the letters written to them in Oklahoma by Mid South and an affidavit in which they asserted that they had eight to ten telephone conversations with American and/or Mid South after they moved to Oklahoma.  *See id.*   The district court granted the defendants' motions to dismiss and the Rambos appealed.  *See id.*

The Tenth Circuit began its analysis by recognizing that "[c]ertainly, telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction."  *Id.* at 1418 (citation omitted).   Indeed, the *Rambo* court noted, "In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards."  *Id.* (citing *Burger King*, 471 U.S. at 475 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.")) (additional citations omitted).   The court cautioned, "[h]owever, [that] the exercise of jurisdiction depends on the *nature* of those contacts," explaining that "[t]he existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards."  *Id.* at 1418-19 (citing *Nicholas v. Buchanan*, 806 F.2d

21

305, 207 (1st Cir. 1986)) (plaintiff's "generalized reference to inter-state contacts 'via telephone communications' and 'via U.S. mail,' without more," did not satisfy due process requirements), *cert. denied,* 481 U.S. 1071 (1987); *Peterson v. Kennedy,* 771 F.2d 1244, 1262 (9th Cir. 1985) ("ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state'") (citation omitted), *cert. denied,* 475 U.S. 1122 (1986); *Scullin Steel Co. v. Nat'l Ry. Utilization Corp*., 676 F.2d 309, 314 (8th Cir. 1982) ("use of interstate facilities (telephone, the mail), . . . are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process")). The test to determine whether the "nature" of the contacts is sufficient to give rise to personal jurisdiction requires a court to determine whether the contacts "represent an effort by the defendant to 'purposefully avail[ ] itself of the privilege of conducting activities within the forum State.'" *Id.* at 1419 (quoting *Hanson*, 357 U.S. at 253). The court explained that it generally is purposeful availment that serves as the "distinguishing feature between those cases finding telephone and mail contacts with the forum state sufficient and those that do not." *Id.* at 1419 n.5.

The Tenth Circuit in *Rambo* held that it could "find no acts by either Mid South or American that [could] be construed as purposeful contacts with the state of Oklahoma," and instead held that "[t]he Oklahoma contacts were fortuitous, resulting from the Rambos change of residence *after* the insurance policy was issued and the claim was filed." *Id.* at 1420 (emphasis in the original). The *Rambo* court concluded that the facts before it were "distinguishable from the common case where an insurance company has solicited the defendant's business in the forum state, or where the accident leading to the litigation occurred in the forum state." *Id.* (citations omitted). The *Rambo* court explained that "minimum contacts are not necessarily established simply because a plaintiff's move into a state requires the defendant to send communications into

that forum." *Id.*   Thus, ultimately, in *Rambo*, it was not the defendants' purposeful acts that established their contacts with the forum but rather the plaintiffs' move to the forum that "require[d]" the defendants to make the contact.   Because a third party's unilateral acts are not sufficient to establish minimum contacts between a defendant and a forum state, the court affirmed the district court's dismissal of the complaint.   *See id.* at 1421.

In reaching its decision, the *Rambo* court relied upon the Ninth Circuit's decision in *Hunt v. Erie Insurance Group*, 728 F.2d 1244 (9th Cir. 1984).   *See id*. at 1420.   In *Hunt*, the insurance company's contacts with the forum were driven by the plaintiff's choice of residence after the claim arose.   *See Hunt*, 728 F.2d at 1248.   The plaintiff in *Hunt*, a resident of Virginia, was injured in an automobile accident in Colorado while she was driving en route to visit her mother in California, and a dispute arose between the plaintiff and the other party's insurance company Erie Insurance Group.   *See id.* at 1245.   Before the claim was settled, Hunt's mother moved the plaintiff to California for treatment and rehabilitation, and subsequently, Hunt brought suit in California for breach of contract and various torts.   *See id.* at 1245-46.   The Ninth Circuit found that Erie's contacts with California were insufficient to support the exercise of personal jurisdiction.   *See id.* at 1248.   The court reasoned, "The mere fact that Erie communicated with Hunt in the state, and may have committed a tort in the exchange of correspondence, does not show that Erie purposefully availed itself of the privilege of conducting business in California." *Id.*   Rather, the court concluded "Hunt's move to California *forced* Erie to send mail to that State concerning her claim."   *Id.* (emphasis added).

Our Tenth Circuit applied a similar reasoning in *Melea, Ltd. v. Jawer, S.A.*, in which it held that, where a pre-existing obligation, which was created by a contract that the parties entered into outside of the forum, required a defendant to make otherwise unanticipated contacts to the

plaintiff's attorney in the forum state, the defendant making the contacts did not purposefully avail itself of the privilege of conducting activities in the forum state to the extent the contacts were required by the contract. *See* 511 F.3d 1060, 1067 (10th Cir. 2007). In *Melea*, the plaintiff Melea, Ltd., a Gibraltar corporation, retained defendant Jawer, S.A., a Swiss corporation, to administer Melea's day-to-day finances. *Id.* at 1062. The parties executed an agreement in Florida under which Jawer had the obligation to undertake various activities on behalf of Melea, *see id.* at 1063, and to pay from Melea's bank account invoices submitted by Melea's attorneys, *see id.* at 1064. Jawer initially received these invoices from Melea's attorneys in Florida, but after Melea retained counsel in Colorado, Jawer began receiving and paying invoices to and from the Colorado counsel. *See id.* This arrangement resulted in Melea filing suit in the United States District Court for the District of Colorado alleging that Jawer breached its fiduciary duties to Melea by paying out unearned legal fees to its Colorado counsel. *See id.* at 1064-65. Jawer filed a motion to dismiss, alleging lack of personal jurisdiction, and the district court granted that motion because it concluded that Jawer was contractually bound to contact the Colorado attorney and that his contacts therefore were not "purposeful." *Id.* at 1065.

The Tenth Circuit upheld the decision in part, opining that the "[t]he district court's analysis [was] correct insofar as it relates to the payments Jawer made to [the attorney] in Colorado," because Jawer contractually was bound to engage in these contacts and therefore, because the defendant "had no choice in the matter," the defendant "[could not] be said to have purposefully directed such actions towards Colorado." *Id.* at 1067 (citation omitted). The Tenth Circuit concluded, however, "[w]ith regard to Jawer's remaining Colorado contacts, consisting primarily of its exchange of communications with Engel," that the contacts were not "purposeful." *Id.* The Tenth Circuit reasoned that, unlike the contractual provisions requiring Jawer to make

payments to the Colorado attorney, there was insufficient evidence in the record for the court to determine whether the defendant was bound to exchange these communications.   *See id.*   Thus, it may have been that the defendant's decision to contact the attorney was not obligatory but rather a "conscious, purposeful decision on its part."   *Id.*   Because courts must resolve factual disputes in favor of the plaintiff on a Rule 12(b)(2) motion to dismiss, the Tenth Circuit held that the defendant's decision to contact the Colorado attorney was purposeful and the contacts therefore satisfied the minimum contacts test.   *See id.*

This Court concludes that, consistent with the Tenth Circuit's reasoning in *Rambo* and *Melea*, and the Ninth Circuit's reasoning in *Hunt*, Felder's eight telephone conversations with Sanchez to provide her with telephone numbers to the State Farm claims department and to a field adjuster, during some or all of which calls Sanchez may have been visiting New Mexico, do not establish that Felder had sufficient minimum contacts with New Mexico to satisfy the minimum contacts prong of the due process test.   That Felder spoke on the telephone to Sanchez, and that these communications happened to occur while Sanchez was visiting New Mexico, do not represent an effort by Felder purposefully to avail himself of the privilege of conducting activities within New Mexico.   *Cf. Rambo*, 839 F.2d at 1420.   Instead, the Court concludes that, as in *Rambo*, Felder's New Mexico contacts were "fortuitous" and unilaterally-driven by Plaintiff Sanchez's decision to visit New Mexico and not by Felder's affirmative conduct to promote the transaction of business in New Mexico.   *Cf. id.*   As the court in *Hunt* held, "[t]he mere fact that [a defendant] communicate[s] with [a plaintiff] in the [forum] state, . . . does not show that [the defendant] purposefully availed [himself] of the privilege of conducting business in [the forum]."   *Hunt*, 728 F.2d at 1248.   Rather, just as it was the plaintiff's move that "forced" the defendant to contact the plaintiff in the forum state in *Hunt*, the plaintiffs' move that "require[d]" the defendants

to make contact with the forum in *Rambo*, and the pre-existing contractual obligation that required the contact with the forum state in *Melea*, so too here it was Plaintiffs' visit to New Mexico that forced Felder to contact Sanchez in New Mexico.   If a contact with a forum state is not driven by the actions of the defendant *himself* that create a "substantial connection" with the forum, *see Burger King*, 471 U.S. at 474-75; *accord Rambo*, 839 F.2d at 1419, it is not sufficient to satisfy the minimum contacts test.   Because fortuitous or unilateral contacts, such as Plaintiffs' decision to visit New Mexico, do not constitute "purposeful availment," the Court holds that Plaintiffs have not satisfied their prima facie burden of establishing that Felder has the requisite minimum contacts with New Mexico to satisfy the first part of the specific jurisdiction test.

In *Ten Mile*, the Tenth Circuit confirmed that, pursuant to the fiduciary shield doctrine, a defendant-company's minimum contacts cannot be attributed to an individual employee of the company. 810 F.2d at 1527.   The Tenth Circuit plainly stated, "Jurisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself, and jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state."   *Id.*   Thus, although State Farm entered into an insurance policy with Plaintiffs, the policy provided coverage in New Mexico, and State Farm reasonably could have anticipated being haled into Court in New Mexico based upon its policy coverage in New Mexico, *see supra* note 3, these facts are not relevant to the inquiry whether the Court has personal jurisdiction over Felder in his capacity as an individual.   Even though Felder sold the insurance policy to Plaintiffs, "Where the acts of individual [employees or agents] of a corporation in the jurisdiction were carried out solely in the [individual's] representative capacity, the corporate structure will ordinarily insulate the individuals from the court's jurisdiction."   *Id.* (citations omitted).   This rule applies here to shield Felder from having State Farm's contacts with New

Mexico imputed to him.

Plaintiffs cite *Santa Fe Technologies, Inc. v. Argus Networks, Inc.*, 42 P.3d 1221, 1237 (N.M. Ct. App. 2001), *cert. denied*, 42 P.3d 842 (N.M. 2002), for the proposition that a defendant whose conduct in the forum state constitutes the basis of a plaintiff's claims against him is subject to the forum state's jurisdiction.   Although the *Santa Fe Technologies* court recognized that the "fiduciary shield doctrine is not constitutionally required in New Mexico," the court was considering only whether the doctrine provides an absolute shield for actions individual employees take in a representative capacity for their corporate employers.   *Id.*   The court concluded that the shield does not apply if the individual employee of a corporation "is a 'primary participant in the alleged wrongdoing intentionally directed' at the forum state, which activities formed the bases of the jurisdiction over the corporation."   *Id.* (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)); *see also Smith v. Cutler*, 504 F. Supp. 2d 1162, 1169-70 (D.N.M. 2007) (citing *Santa Fe Technologies* and holding that the fiduciary shield doctrine does not apply where the defendant's conduct itself forms the basis of the plaintiff's claims and the conduct cannot be characterized as ancillary to the underlying claim).

The Court is not persuaded that *Santa Fe Technologies* offers a new dimension to its analysis.   The *Santa Fe Technologies* holding can be construed as another way of stating the principle articulated by the Tenth Circuit in *Ten Mile*.   The *Ten Mile* court held that the fiduciary shield doctrine protects an employee of a corporation from having a court impute a corporation's contacts to the employee and not that the doctrine provides absolute immunity from suit for any acts undertaken in an employee's representative capacity for the corporation.   *See* 810 F.2d at 1527.   Indeed, *Ten Mile* expressly contemplates that a court can exercise personal jurisdiction over an employee on the basis of his or her own individual contacts with the state.   *See id.*

(citation omitted).   An employee who meets *Santa Fe Technologies*' standard of being a "primary participant in the alleged wrongdoing intentionally directed at the forum state," 42 P.3d at 1237 (internal quotations and citation omitted), likely meets the purposeful availment requirement necessary to establish sufficient minimum contacts under constitutional test for personal jurisdiction.   The Court has held that Felder's eight telephone contacts with Plaintiff Sanchez are insufficient to establish that he purposely availed himself of the privilege of conducting activities in New Mexico.   The same reasons that supported this holding compel the Court to conclude that Felder's calls are not sufficient to establish that he was a "primary participant in the alleged wrongdoing intentionally directed at the forum state" within the meaning of *Santa Fe Technologies*.   42 P.3d at 1237 (internal quotation marks and citation omitted).   Thus, because Plaintiffs have not established that Felder's calls satisfy this standard, *Santa Fe Technologies* does not support the Court's exercise of personal jurisdiction.

The Court also holds that *Santa Fe Technologies* is inapplicable for a second reason.   In *Santa Fe Technologies*, the individual defendant actually participated in the commission of the business tort and that tort formed the basis of the plaintiff's complaint.   *See id.*; *Cutler*, 504 F. Supp. 2d at 1169 (explaining that in *Santa Fe Technologies* the employee-defendant sued "actually participated in the commission of a business tort").   The court held that, where a non-resident defendant employed by a defendant corporation purposefully directs his activities towards a plaintiff in the forum state by being a primary participant in the very conduct sued upon, that employee-defendant has engaged in purposeful contact with the forum sufficient to give rise to the court's exercise of personal jurisdiction over the employee.   *See Santa Fe Technologies*, 42 P.3d at 1237; *Cutler*, 504 F. Supp. 2d at 1169.   There are no facts before the Court establishing that Felder's eight telephone calls, which were for the purpose of providing Plaintiff Sanchez with the

28

telephone numbers to the State Farm claims office and a local field adjustor, are part of the negligence, fraud, or intentional infliction of emotional distress claims Plaintiffs sue Felder upon. Thus, *Santa Fe Technologies* is inapplicable for this reason as well.

The Court's holding likewise is consistent with the District of New Mexico's opinion in *Russey v. Rankin*, 837 F. Supp. 1103 (D.N.M. 1993), in which the court recognized that certain case law establishes "that mail or telephone contacts alone are insufficient to support personal jurisdiction," but ultimately held that its facts were distinguishable from these cases. *Id.* at 1105 (citations omitted). The *Russey* court explained that the communications in the cases finding no personal jurisdiction were ancillary to the "precise subject matter of th[e] action," whereas in *Russey* the non-resident defendant's "written correspondence [wa]s the nucleus of the alleged wrongful conduct rather than just an ancillary contact with the forum." *Id.* (citations omitted). Thus, the court concluded that, because the defendant reasonably should have "anticipated being hailed into New Mexico court on claims based upon the letter," it had personal jurisdiction over the defendant. *Id.* (citations omitted).

Although Plaintiffs attempt to use Koeblitz's affidavit to establish that Felder engaged in the conduct of managing, investigating, supervising, administering, and processing Plaintiffs' accident claim, and Plaintiffs alleged that this conduct formed the basis or "nucleus" of their tort claims against Felder, the Court struck these facts for failure to comply with the personal knowledge requirement set forth in Federal Rule of Civil Procedure 56(c)(4). Thus, the only facts before the Court establishing Felder's contacts with New Mexico are limited to his eight telephone calls to Plaintiff Sanchez. Because these telephone calls were for the purpose of providing her with the telephone numbers to the State Farm claims office and a local field adjustor, and there is no evidence tying the calls to negligence on the part of Felder, they are ancillary to the nucleus of

29

facts forming the basis of Plaintiffs' tort claims against Felder.  Thus, the Court's holding that Felder's contacts are not sufficient to satisfy the minimum contacts standard is consistent with *Russey*.

Having held that Defendant Felder does not have sufficient minimum contacts with the State of New Mexico to establish personal jurisdiction in this Court, the Court need not consider whether Plaintiffs have satisfied the second part of the specific jurisdiction test by showing that this litigation results from alleged injuries that arise out of or relate to Felder's contacts with New Mexico.  *OMI Holdings v. Royal Ins. Co.*, 149 F.3d 1086, 1090-91 (10th Cir. 1998).  The Court's holding that Felder lacks sufficient minimum contacts with New Mexico is dispositive, and the Court therefore declines to consider the second constitutional question.

B.      Pope does not have Sufficient Minimum Contacts with New Mexico to Support the Court's Exercise of Personal Jurisdiction Over Him.

The Court likewise concludes that Plaintiffs have failed to establish that Defendant Pope has sufficient minimum contacts with New Mexico to satisfy the first prong of the specific jurisdiction test.  Although Plaintiffs allege that Pope managed, investigated, supervised, administered, and processed Plaintiffs' accident claim, the Court has struck Plaintiffs' evidence supporting this claim on the ground that the evidence does not comply with Rule 56(c)(4)'s personal knowledge requirement.  Thus, the sole facts before the Court relevant to the question of jurisdiction are (1) a reservation of rights letter that was sent by State Farm under Pope's signature to Plaintiffs' New Mexico counsel, (2) that Pope is a resident of Tennessee, (3) that Pope is the "team manager" assigned to Plaintiffs' insurance claim, (4) that ,"[a]s team manager, [Pope] did not, nor was [he] required to investigate Plaintiffs' claim," (5) that Pope did not conduct any investigation of Plaintiffs' loss, the damage claim, or the accident itself, that he played no role in

the vehicle inspection, valuation or liquidation, and that his sole role was "strictly supervisory and all of [his] work . . . occurred in the State of Tennessee," and (6) that Pope has never been to New Mexico, owns no property in New Mexico, has no economic connections or ties to New Mexico, has no office, telephone number, directory listing, address, or bank account in New Mexico, pays no taxes to the State of New Mexico, and conducts no business in New Mexico.  *Supra* at 6.

For the same reasons the Court held that Defendant Felder's telephone contacts with Plaintiff Sanchez, who may have been in New Mexico for some or all of the calls, was not sufficient to confer personal jurisdiction on this Court, the Court also holds that Defendant Pope's reservation of rights letter and his role as team manager are not sufficient to confer jurisdiction. With respect to Pope's reservation of rights letter sent to Plaintiffs' counsel in New Mexico, the Court concludes that this contact does not constitute purposeful conduct by which Pope availed himself of the privilege of conducting activities in New Mexico.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (explaining that it is "essential in each case that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State").   It was Plaintiffs' decision to hire an attorney in New Mexico that forced Pope to send the reservation of rights letter to New Mexico.   This unilateral choice of Plaintiffs' "cannot satisfy the requirement of contact with the forum State," because it is the defendant's affirmative acts that are determinative.  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1419 (10th Cir. 1988) (explaining that if it is the actions of the plaintiff that establish a defendant's contact with a forum, this contact is not sufficient to confer personal jurisdiction).

Likewise, the Court declines to hold that Pope's duties as "team manager" are sufficient to establish minimum contacts with New Mexico.   Pope's responsibilities as team manager did not

require him to conduct any investigation of Plaintiffs' claim and did not require him to play any role in Plaintiffs' vehicle inspection, valuation, or liquidation.   Rather, his duties as team manager were "strictly supervisory" and all of his work occurred in Tennessee.

Nor will the Court impute State Farm's contacts with New Mexico to Pope.   The fiduciary shield doctrine provides that a defendant-company's minimum contacts cannot be attributed to an individual employee of the company "[w]here the acts of the individual [employee] of a corporation in the jurisdiction were carried out solely in the [individual's] representative capacity."   *Ten Mile Industrial Park v. West Plains Service Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987).   Thus, because the reservation of rights letter was sent in Pope's representative capacity for State Farm, the Court will not impute State Farm's contacts with New Mexico to Pope.

Moreover, *Santa Fe Technologies, Inc. v. Argus Networks, Inc.*, 42 P.3d 1221 (N.M. Ct. App. 2001), does not persuade the Court to hold otherwise.   Plaintiffs have not identified facts properly before this Court demonstrating that Pope actually participated in the commission of the torts of negligence or intentional infliction of emotional distress aimed intentionally at Plaintiffs in New Mexico.   The Court only considers Pope's single contact of sending a reservation of rights letter to New Mexico.   This contact was dictated by Plaintiffs' choice to hire an attorney in New Mexico and is not sufficient to establish that Pope "actually participated" in tortious conduct intentionally aimed at Plaintiffs in New Mexico.   Thus, *Santa Fe Technologies* does not apply.

Finally, the Court's conclusion is not altered by the District of New Mexico's decision in *Russey v. Rankin*, 837 F. Supp. 1103 (D.N.M. 1993).   In *Russey*, the court held that while a non-resident defendant's written correspondence to a plaintiff in the forum state was sufficient to confer personal jurisdiction, it reached this decision because the correspondence "was the nucleus of the alleged wrongful conduct," and not simply "ancillary contact with the forum."   *Id.* at 1105

(citations omitted).   Plaintiffs have not pointed to facts properly before this Court which establish that Pope's reservation of rights letter forms the "nucleus" of Plaintiffs' claim against Pope. Thus, the letter alone cannot confer personal jurisdiction on this Court.

Having held that Defendant Pope does not have sufficient contacts with the State of New Mexico to establish personal jurisdiction in this state, the Court need not consider whether Plaintiffs have satisfied their burden of showing that this litigation results from alleged injuries that arise out of or relate to Pope's contacts with New Mexico.   *OMI Holdings v. Royal Ins. Co.*, 149 F.3d 1086, 1090-91 (10th Cir. 1998).   The Court's holding that Pope lacks sufficient minimum contacts with New Mexico is dispositive, and the Court therefore will not consider second part of the constitutional test.

## CONCLUSION

**IT THEREFORE IS ORDERED** that Defendants Andrew Felder and Reginald Pope's Motion to Dismiss for Lack of Personal Jurisdiction and Supporting Memorandum of Law [Doc. 5] is hereby **GRANTED**.

**SO ORDERED** this 31st day of March, 2015.

_____
M. CHRISTINA ARMIJO
CHIEF UNITED STATES DISTRICT JUDGE