## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

THERESA SANCHEZ and
DESTINY LEE,

       Plaintiffs,

v.                                      No. 14-CV-0433 MCA/LAM

STATE FARM FIRE AND CASUALTY
COMPANY,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant State Farm's Motion for Summary
Judgment, filed January 6, 2015.  [Doc. 28].  Having considered the parties' submissions, the
relevant law, and otherwise being fully advised in the premises, the Court finds that the motion is
well taken in part and will be granted in part.

## BACKGROUND[1]

Plaintiffs Theresa Sanchez ("Sanchez") and Destiny Lee ("Lee") (collectively,
"Plaintiffs") allege that Defendant State Farm Fire and Casualty Company ("State Farm")
breached its contract of insurance, breached the covenant of good faith and fair dealing, acted in
bad faith, violated the New Mexico Unfair Insurance Practices Act ("UIPA") and the New Mexico
Unfair Practices Act ("UPA"), and committed the torts of negligence, intentional infliction of
emotional distress, and fraud.  [Doc. 1 at 6-24].  The complaint arises from an automobile
accident that occurred in New Mexico on December 22, 2013, when Plaintiffs, who are Tennessee

---

[1]  The following facts either are undisputed or viewed in the light most favorable to Plaintiffs as
the parties opposing summary judgment.

residents, were visiting a relative who lived in New Mexico.   At the time of the accident, Plaintiffs were insured by a State Farm policy issued in Tennessee.   [Doc. 28-1 ¶ 3].

Sanchez attests in her affidavit that she was traveling in the left lane of a two-lane interstate when a tractor-trailer swerved into her lane, and collided with the front passenger side of her automobile.   [Doc. 32-1 ¶ 8].   Sanchez attests that she "personally felt the impact of the tractor-trailer as it collided into the passenger side of [her] vehicle."   [*Id.* ¶ 14].   The impact caused Sanchez to lose control of her vehicle, veer left approximately 90 degrees, and crash into a large concrete median.   [*Id.* ¶ 8].

After the collision, Sanchez's vehicle came to rest, stalled across both lanes of the highway.   [*Id.* ¶ 9].   Sanchez observed a semi-truck traveling towards their car and was worried that the truck would collide with their vehicle because Sanchez's car was black, the lights to the car were not operative, it was early morning and dark outside, and there was no overhead lighting in the area.   [*Id.* ¶¶ 10-11].   Sanchez attempted to start and move her vehicle, but could not do so and therefore informed her daughter (Lee) that they must exit the vehicle to avoid being hit.   [*Id.* ¶ 11].   Lee could not open the passenger-side door because it had sustained damage from the collision.   [*Id.*].   Sanchez exited the vehicle and attempted by signal to notify the driver of the semi-truck of the presence of Plaintiffs and their vehicle.   [*Id.*].   Lee escaped through the driver-side door as the semi-truck bypassed Sanchez's vehicle without hitting it.   [*Id.*].

As a result of the collision, Sanchez's vehicle was heavily damaged and "totaled."   [*Id.* ¶¶ 9, 12].   The driver of the tractor-trailer left the scene without exchanging identifying information and has never been identified.   [*Id.* ¶ 12; Doc. 28-2 at 2, ¶ 7].   Besides the parties to the accident, there are no other known persons who witnessed the collision.   [Doc. 28-2 at 2, ¶ 7; Doc. 32 at 10].

The police arrived at the scene and conducted an investigation.  [Doc. 32-1 ¶ 19].  Sanchez, who was "shaken up" and "in pain," gave a statement to the police.  [*Id.*].  The police report indicates that Sanchez reported that the tractor-trailer "struck her vehicle on the passenger side door."  [Doc. 32-1 at 12].  Sanchez asserts that because it was dark, she was not able "to fully assess the impact or damage" and that she was "acutely aware of the damage to the passenger side door since [her daughter] wasn't able to push it open."  [*Id.* ¶ 15].  The anxiety Sanchez experienced from believing that the oncoming semi-truck would hit their stalled vehicle and that her daughter might die weighed heavily upon her.  [*Id.*].  Sanchez attests that for these reasons she informed the police that the tractor-trailer hit her vehicle on the passenger-side door instead of the passenger-side front fender.  [*Id.*].

Sanchez reported the accident to State Farm on the evening of the accident.  [Doc. 28-2 at 1, ¶ 2].  Sanchez gave the agent "as many details as possible about the incident, including all of the information he requested.  It was a complete description of the hit-and-run crash, including the impact by the tractor-trailer driver."  [Doc. 32-1 ¶ 23].  Sanchez does not know whether the call was recorded.  [*Id.*].  Sanchez made a property damage claim, which State Farm paid.  [Doc. 28-2 at 1, ¶ 3].  Plaintiffs also made a claim for uninsured motorist benefits.  [*Id.* at 1, ¶ 4].

Plaintiffs experienced worsening pain the next day, and they both went to the emergency room for examination and treatment.  [Docs. 32-1 ¶ 24, 32-2 ¶ 11].  Plaintiffs provided statements to emergency room staff regarding the accident.  [Docs. 32-1 ¶ 24, 32-2 ¶ 11].  Plaintiffs subsequently sought treatment from a chiropractor and provided statements regarding the accident to the chiropractor.  [Docs. 32-1 ¶ 24, 32-2 ¶ 11].  Plaintiffs made their medical records from these visits available to State Farm.  [Docs. 32-1 ¶ 24, 32-2 ¶ 11].

Sanchez's insurance agent, Andrew Felder, a Tennessee resident who interacted with

Plaintiff from Tennessee, [Doc. 1 at 20-21], telephoned Sanchez on or around December 23, 2013, which was one day after the accident, [Doc. 32-1 ¶ 25].  Felder asked Sanchez "to detail the collision and crash for him"; Sanchez spoke "at length" with Felder and "again disclosed exactly what had happened, including all of the accident details."   [*Id.*].

For the next week or slightly longer State Farm failed to take any action.  [*Id.* ¶ 26].  Sanchez "kept calling" State Farm to ask when an adjuster would be inspecting her vehicle and preparing an estimate, but State Farm kept providing Sanchez with "excuses" and telling her that "nothing could be done because of the holiday."   [*Id.*].  Felder intervened to facilitate an "expedited vehicle inspection" from State Farm's New Mexico claims staff, including an appraisal and repair estimate."   [*Id.* ¶ 27].

A State Farm adjuster from the New Mexico office met Sanchez at her mother's house approximately one week after the crash.  [*Id.* ¶ 28].  The adjuster conducted "another in-depth interview about the collision, and took quite a few pictures of [the] wrecked car."   [*Id.*].  The interview was "an exhaustive chronology of the collision and crash, and lasted approximately 15 minutes."   [*Id.*].  Sanchez told the adjuster "the entire story again."   [*Id.*].  In total, Plaintiff spent 45 minutes with the adjuster, which included the time it took to conduct the interview, photograph and inspect the vehicle, and prepare a report.   [*Id.*].

Nothing happened in the next few days, and Felder again had to intervene to "facilitate the New Mexico claims staff to coordinate the vehicle pick-up and liquidation, including the salvage valuation."   [*Id.* ¶ 29 (emphasis in original)].   Felder also assisted Plaintiff as she negotiated with the New Mexico vehicle liquidator, State Farm, and Wells Fargo Bank "to get [Sanchez's] GAP coverage."   [*Id.*].  Felder further facilitated the payment of Plaintiffs' property damage claim. [*Id.*].

4

The State Farm policy includes the following requirement limiting uninsured motor vehicle coverage when an accident involves no physical contact between the insured vehicle and the uninsured motor vehicle:   "If there is no physical contact between th[e] land motor vehicle [that is uninsured] and the *insured* or the vehicle the *insured* was *occupying*, then the existence of such [uninsured] land motor vehicle and the facts of the accident must be established by clear and convincing evidence other than evidence provided by the occupants of the vehicle occupied by the *insured* when the accident occurred."   [Doc. 28-1 ¶ 4] (emphasis in original).   The State Farm policy also includes a provision applicable to all coverages that requires the insured to cooperate with State Farm.   This clause is titled "Insured's Duty to Cooperate with Us" and provides, "The *insured* must cooperate with *us* and, when asked, assist *us* in:   (1)  making settlements; (2) securing and giving evidence; and (3) attending, and getting witnesses to attend, depositions, hearings, and trials."   [*Id.* ¶ 5] (emphasis in original).   The policy further provides that insureds have a duty to submit to questioning under oath when making a claim:   "each *insured*, or any other *person* . . . making claim or seeking payment[] . . . must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require.   Such *person* . . . must answer questions under oath, asked by anyone *we* name, and sign copies of the answers."[2]   [*Id.* ¶ 6] (emphasis in original).

On January 22, 2014, one month after the accident, State Farm requested a recorded statement from Plaintiffs.   [Doc. 28-2 at 5].   In its letter making the request, State Farm's representative explicitly informed Plaintiffs' counsel that State Farm would need to secure the statement "as part of [its] investigation to determine if this claim qualifies for uninsured motorist

---

[2] The truncated definition of uninsured motor vehicle, the cooperation clause, and the provision for questioning under oath are the only portions of Plaintiffs policy provided to the Court.   *See* [Doc. 28-1]

coverage."   [*Id.*].   In a separate reservation of rights letter sent that same day, State Farm alerted Plaintiffs that it may have no duty under the policy because, in its estimation, "[i]t is questionable whether the accident arose out of the ownership, maintenance or use of an Uninsured Motor Vehicle, as defined in the policy" and "[i]t is questionable whether the injury was caused by a hit-and-run motor vehicle, so as to qualify as an uninsured motor vehicle under the Uninsured Motor Vehicle Coverage." [Doc. 34-1]

State Farm sent three additional letters requesting the recorded statements on January 29, 2014, [28-2 at 6], February 4, 2014, [*id.* at 7], and February 25, 2014, [*id.* at 8].[3]   In the last letter, State Farm notified Plaintiffs' counsel that if it did not secure the recorded statements within two weeks, State Farm would require an examination under oath.   [*Id.*].

Plaintiffs did not acknowledge or otherwise respond to State Farm's written requests for recorded statements until their attorney sent State Farm a letter on April 9, 2014.   [Doc. 28-2 at 9-11].   In this letter, Plaintiffs' counsel contested the topics of State Farm's inquiry as well as State Farm's entitlement to question Plaintiffs about the facts underlying what counsel deemed "irrelevant and unenforceable policy provisions."   [*Id.*].   It is undisputed that Plaintiffs' counsel did not schedule a recorded statement or examination under oath.   The April 9, 2014 letter informed State Farm that Plaintiffs' filed this suit on that same date.   [*Id.*]

With the exception of the activities conducted by State Farm's New Mexico representatives detailed herein, the remainder of Plaintiffs' claim for uninsured motorist benefits was handled in Tennessee by Tennessee adjusters.   [Doc. 28-2 at 2, ¶ 5].   State Farm has not

---

[3] Plaintiffs object to the fact that State Farm's February 4, 2014 letter requested a recorded statement.   [Doc. 32 at 11 (Fact 19)]   In pertinent part, the letter states "We still need to speak with your client to complete our investigation. Please contact me to schedule a statement." [Doc. 28-2]   Whether or not the letter requests a recorded statement, even construing the facts in favor of Plaintiff, it is clear that State Farm requested that Mr. Bleus contact it in order to secure a statement from his client.   It is uncontested that Plaintiffs did not schedule a statement.

denied Plaintiffs uninsured motorist claim.

## STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if the movant "show[s]" that the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" "do not establish the absence or presence of a genuine dispute," Fed. R. Civ. P. 56(c), and that "the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).   Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.   *See Shapolia v. Los Alamos Nat'l Lab*., 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted).   The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1990) (citation omitted).

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).   Upon a motion for summary judgment, a district court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co*., 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).

## **DISCUSSION**

State Farm moves for summary judgment on all Plaintiffs' claims on the grounds that by failing to provide a recorded statement or submit to an examination under oath Plaintiffs breached their duty to cooperate, thus relieving State Farm from any obligation under the policy.    In the alternative, State Farm moves for summary judgment on Plaintiffs extra-contractual claims of bad faith, intentional infliction of emotional distress, and violation of the UIPA and UPA.   The Court first addresses Plaintiffs' objections to State Farm's summary judgment evidence and thereafter considers the merits of State Farm's summary judgment motion.

I.   The Court Overrules Plaintiffs' Objections to State Farm's Summary Judgment Evidence.

Plaintiffs object to the Affidavit of Mark Yoos, asserting that Yoos does not have personal knowledge of the statements contained in his affidavit but rather relies only upon the claims file. Plaintiffs assert that the affidavit therefore is not admissible because it is not based upon personal knowledge, lacks a proper foundation, and constitutes hearsay.   The Court is not persuaded.

State Farm need not present summary judgment evidence in a form that would be admissible at trial provided that the content of the evidence would be admissible at trial.   *See Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005); *accord Weinbaum v. Las Cruces Pub. Schs.*, 465 F. Supp. 2d 1116, 1130 n.16 (D.N.M. 2006) (citation omitted).   Plaintiffs do not object to the content of the Yoos affidavit, *i.e.*, the information conveyed by the file itself. The Court has no doubt that State Farm in short order could call the appropriate witness(es) and lay the proper foundation for admission of the claims file into evidence at trial.   Mr. Yoos testified by affidavit that he reviewed the claim file and had personal knowledge of the matters set forth in the affidavit.   Thus, the Court overrules Plaintiffs' objections on the grounds of improper foundation and lack of personal knowledge.   *Cf. Bryant,* 432 F.3d at 1123 (holding that data referred to in

8

party's declaration should not have been excluded on the basis of lack of personal knowledge by the party where the party stated she reviewed the data and it was in a format familiar to her).

The Court also overrules, in part, Plaintiffs' unspecific hearsay objection to the Yoos affidavit.  Even though Yoos' affidavit statement itself may constitute hearsay, the content of the affidavit would be admissible at trial pursuant to the business records exception to the hearsay rule.  *See* Fed. R. Evid. 803(6) (providing that a record is excepted from the hearsay rule if the testimony of a custodian or other qualified witness demonstrates that the record was "made at or near the time by—or from information transmitted by—someone with knowledge," was "kept in the course of a regularly conducted activity of a business," and was a "regular practice of that activity"); [Doc. 34 ¶¶ 2-5 (attesting to the foundational facts necessary to satisfy the business records exception to the hearsay rule)].  Because the business records themselves that Mr. Yoos relied on would be admissible at trial, the Court overrules Plaintiffs' objection to the Yoos affidavit to the extent the statements are supported by the attached documents created by State Farm.  *Cf. Bryant*, 432 F.3d at 1123 (explaining that a spread sheet containing the results of 103 audits would be hearsay, but would be admissible pursuant to Rule 803(6)); *see also Hardy v. S.F. Phosphates Ltd.*, 185 F.3d 1076, 1082 n.5 (10th Cir. 1999) (explaining that, although a "fair amount of inadmissible hearsay evidence" was introduced to support a party's motion for summary judgment, "the nonmoving party need not produce evidence in a form that would be admissible at trial" provided that "the content or substance of the evidence [is] admissible") (internal quotation marks and citation omitted).

In its Reply, State Farm provided an additional affidavit by Mr. Yoos.   State Farm offered it "to establish that the documents referenced meet the business records exception to the hearsay rule."   [Doc. 35 at 7]   One of the documents on which Mr. Yoos relied in making his Affidavit is

a letter from Plaintiffs' attorney to State Farm.   [Doc. 28-2]   This document arguably does not meet the requirements of the business records hearsay exception – it was not made by anyone at State Farm.   However, it does not appear that Plaintiffs object to the letter.   In fact, it is the only evidence that Plaintiffs point to in an attempt to controvert some of Defendant's stated material facts.   For example, Defendants assert that Plaintiffs' counsel never responded to its January 22, 2014 request for a recorded statement, and Plaintiffs point to the April 9, 2014 letter as the response.   [Doc. 28 at 5, ¶ 17-18; Doc 32 at 11, Fact 18] Additionally, the letter may be offered for non-hearsay purposes.   For these reasons, the Court considers it here.

Plaintiffs also object to State Farm's photographs of Sanchez's vehicle, arguing that the evidence is not supported by the proper foundation—*i.e.*, "a witness who can properly attest to the existence or omission of damage."   [Doc. 32 at 6].   State Farm could produce a witness at trial to lay the proper foundation for the photographs.   Thus, the Court overrules the objection.   *Cf. Weinbaum*, 465 F. Supp. 2d at 1130 n.16 (overruling objection because plaintiff could authenticate letter at trial).

II.   <u>Complete Summary Judgment on all of Plaintiffs' Claims Is Precluded Because There is a Dispute of Fact as to Whether State Farm is Relieved From its Obligations Under the Policy.</u>

State Farm moves for summary judgment on all of Plaintiffs' claims, arguing that it is relieved of any obligation under the policy because Plaintiffs breached their duty to perform under the cooperation clause of the policy, and cooperation is a condition precedent to recovery. Plaintiffs, in turn, assert that they have satisfied their summary judgment burden of identifying facts that, if construed in Plaintiffs' favor, establish that Plaintiffs did not breach their duty to cooperate, and that Plaintiffs' failure to provide State Farm with recorded statements or examinations under oath did not substantially prejudice State Farm.

A.     <u>Tennessee Law Governs Plaintiffs' Contractual Claims Against State Farm</u>.

As a threshold matter the Court must determine what state's law applies to Plaintiffs' breach of contract claim:   Tennessee law as State Farm claims, or New Mexico law as Plaintiffs contend.   A district court exercising diversity jurisdiction applies the choice of law rules of the forum state.   *Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 802 (10th Cir. 1998).   "Generally, in determining the appropriate law to apply when an accident occurs in one state and an insurance contract has been entered in another, the law of the place of the accident applies to determine the plaintiff's right to recover from the negligent party, and the law of the place of the contract, the *lex loci contractus*, applies to interpret the terms of the contract."   *Wilkeson v. State Farm Mut. Auto. Ins. Co.*, 229 P.3d 749, 750 (N.M. Ct. App. 2014), *cert. denied*, 328 P.3d 1188 (2014); *Demir v. Farmers Texas Cnty. Mut. Ins. Co.*, 140 P.3d 111, 1114 (N.M. Ct. App. 2006); *State Farm Auto Ins. Co. v. Ovits*, 873 P.2d 979 (N.M. 1994); *Shope v. State Farm Ins. Co.*, 925 P.2d 515, 516 (N.M. 1996).   New Mexico has a public policy exception to this general choice of law rule. It is triggered when "even though the forum state would be otherwise required to apply the law of the other state, if that law were so conflicting with the public policy of the forum state, it could properly apply its own law."   *Wilkeson*, 329 P.3d at 750; *see, e.g.*, *Demir*, 140 P.3d at 1113-16 (applying New Mexico law to the provisions of a Texas insurance policy where Texas no contact exclusion from uninsured motorist coverage violated New Mexico's public policy of protecting insured accident victims).

Despite these principles, Plaintiffs contend that New Mexico law applies to determine State Farms obligations under the policy.[4]   They argue, "[s]ince the policy states that State Farm's

---

[4] Plaintiffs do not offer an argument as to how interpretation of the cooperation provisions of the policy would result in a different result under New Mexico law.   Plaintiffs hang their argument on the issue of the potential unenforceability

policy will pay for injuries Plaintiffs are 'legally entitled to collect from the uninsured motor vehicle' driver, and Plaintiff's rights against the uninsured motorist are governed by New Mexico law, it follows that Plaintiff's rights under State Farm's policy are governed by New Mexico law." [Doc. 32 at 13]   Plaintiffs' argument collapses the choice-of-law distinction explained in *Wilkeson* and assumes that because New Mexico law covers aspects of Plaintiffs' claims against State Farm for which State Farm has stepped into the tortfeasor's shoes, New Mexico law also covers aspects of Plaintiffs' claims against State Farm for which State Farm has *not* stepped into the tortfeasor's shoes. This argument is largely foreclosed by New Mexico law.   *Wilkeson*, 239 P.3d at 750.

The issue before the Court is whether Plaintiffs breached their duty to the insurer under the cooperation provisions of the policy when they did not provide Defendant with recorded statements as requested.   This is a matter that sounds in contract; therefore, the law of the place of the contract applies.   *See Terrazas v. Garland & Loman, Inc.*, 142 P.3d 374, 377 (N.M. Ct. App. 2006) (explaining that the first step in a conflicts analysis is to determine the substantive area of law, and then determine what law to apply).   Plaintiffs do not argue that applying the Tennessee law of contract interpretation would "result in a violation of fundamental principles of justice" of New Mexico. *Demir*, 140 P.3d at 1114.[5]   Because there is no policy exception here, the Court turns to Tennessee law to determine whether Defendant is entitled to summary judgment on Plaintiffs' contractual claims.

B.     No Question of Facts Exists as to Whether Plaintiffs Breached their Duty to

---

of the "no contact" provision.   However, this is not the provision at issue here.
[5] The Court notes that Plaintiffs argue that, applying New Mexico law, the "physical contact" clause of the insurance policy is contrary to New Mexico policy and unenforceable.   [Doc. 32 at 13-14]   This clause, however, is not the clause on which the Court's analysis as to whether Plaintiffs breached their duty to Defendant turns and therefore not the issue before the Court.

Cooperate.

Tennessee subjects insurance contracts to the same rules of construction as other contracts, and, in the absence of fraud or mistakes, construes contractual terms pursuant to their plain and ordinary meaning.  *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012).  Tennessee, recognizes the validity of conditions precedent for insurance coverage, including for uninsured motorist coverage.  *Alcazar v. Hayes*, 982 S.W.2d 845, 848 (Tenn. 1998).  Tennessee law also recognizes cooperation clauses as valid and that an insured must satisfy his or her duties under a policy's cooperation clause as a condition precedent to recovery.  *Lester v. Allstate Prop. and Cas. Ins. Co.*, 743 F.3d 469, 470 (6th Cir. 2014) (applying Tennessee law and concluding because the insured "refused to submit to an examination, [the insurance company] had no obligation to pay the claim."); *Spears v. Tenn. Farmers Mut. Ins. Co.*, 300 S.W.3d 671, 680-81(Tenn. 2009) ("find[ing] that submission to answer questions under oath when requested as provided for in the insurance policy at issue is a condition precedent to an insured's recovery under that policy."); *Talley v. State Farm Fire and Cas. Co.*, 223 F.3d 323, 325 (6th Cir. 2000) ("Cooperation clauses in liability policies have been universally held to be valid" and "Tennessee courts view these clauses as conditions precedent.").

Plaintiffs argue that they have not failed to perform their duties under the insurance policy. They assert that they provided eight statements, three of which were to State Farm, and they only refused to answer irrelevant questions related to the no contact provision of the uninsured motorist policy.   Plaintiffs further assert that Defendant's requests for recorded statements abuse discovery rules because the requests were "duplicative, redundant, burdensome, unreasonable and directed to issues outside the permissible scope of State Farm's investigation."   [Doc. 32 at 4].   The Court is not persuaded.

13

Under the insurance policy itself, Plaintiffs were obligated to cooperate with State Farm by "giving evidence."  [Doc. 28-1 ¶ 5].  Evidence in the form of witness statements is what State Farm requested when it sought recorded statements from the insured.  State Farm's policy also plainly states that Plaintiffs, as insureds and persons seeking payment for uninsured motorist coverage, "must" at "*our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require."  [*Id.* ¶ 6 (emphasis original)].  Plaintiffs' obligations to give evidence and submit to an examination under oath were not discretionary and the contract provisions imposing these duties did not include exceptions under which Plaintiffs—for their own or any other reasons—might refuse to cooperate.  To the contrary, once State Farm, in its sole discretion opted for the first time to request an examination or statement under oath, Plaintiffs were *required* to submit to that examination under oath pursuant to the plain language of the contract of insurance to which they agreed.  Similarly, Plaintiffs contractually were obligated to cooperate with State Farm's investigation by "giving evidence."

That Plaintiffs may have provided eight statements does not alter the Court's conclusion for several reasons.  First, only three of the statements were to State Farm or its agent, and, of those three statements, none were recorded or under oath.  Thus, the statements did not satisfy Plaintiffs' contractual obligation to provide an examination under oath, and State Farm was entitled, in its sole discretion, to request and receive from Plaintiffs a recorded statement or examination under oath.  Similarly, the Court holds that Sanchez's initial statement notifying State Farm of the accident, her next-day statement to her agent Felder, and her fifteen-minute interview with the adjuster do not absolve Plaintiffs of any further duty to provide evidence under the cooperation clause of the policy.  To the contrary, as the Tennessee courts have explained, an insurer contractually "is entitled to obtain . . . all knowledge and all information . . . material to [its]

14

rights to enable [it] to decide upon [its] obligations, and to protect [it] against false claims." *Shelter Ins. Co. v. Spence*, 656 S.W.2d 36, 38 (Tenn. Ct. App. 1983) (internal quotation marks and citation omitted).

Second, State Farm was entitled to request and receive recorded statements from Plaintiffs despite Sanchez's three previous statements to State Farm or its agent, because these statements were given prior to State Farm's receipt of all of the relevant facts.   For example, it was only after State Farm received the police reports containing Sanchez's statement to the police and after the State Farm adjuster took photographs of Sanchez's vehicle that State Farm had the opportunity to discover that Sanchez had informed the police that the uninsured vehicle hit her vehicle on the passenger-side door while the photographs failed to show, in State Farm's estimation, damage to the passenger-side door consistent with impact.   Thus, when Sanchez reported the accident on the night it occurred, when she spoke with her agent Felder the day after the accident, and when she answered the State Farm adjuster's interview questions one week after the accident, State Farm could not have questioned Sanchez about the discrepancy because it was not aware that any discrepancy existed.[6]

Third, that Plaintiffs provided other statements to State Farm did not relieve them of further obligations under the cooperation clause because State Farm obtained no statement at all from Lee.

---

[6]   That Sanchez may have been "shaken up" by the accident, [Doc. 32-1 ¶ 19], and therefore indicated to the police that the impact occurred on the passenger-side door instead of the passenger-side front fender, or that Sanchez may have assumed the impact occurred on the passenger-side door because her daughter could not open the door to exit the vehicle and because it was dark and Sanchez was not able fully to assess the damage, is not of consequence, [*id.* ¶15]. For, while these facts may well explain the discrepancy, the discrepancy nonetheless exists and, while not necessary to establish that State Farm's investigation was reasonable, the discrepancy nonetheless is sufficient on these facts to render State Farm's desire to conduct additional investigation into the inconsistency between Sanchez's statement and the physical evidence reasonable.

Lee's only statements were to emergency room personnel and the police, and not to a State Farm representative or a State Farm agent.[7]   For these reasons, the Court concludes that Plaintiffs' other statements did not release them from further contractual obligation to cooperate with State Farm.

The Court likewise is not persuaded by Plaintiffs' argument that they did not refuse to give a recorded statement on all topics but rather only refused to submit to an examination on topics that Plaintiffs deemed were irrelevant—*i.e.*, topics related to whether the uninsured vehicle made contact with Plaintiffs' vehicle.   This distinction is not of import.[8]   Plaintiffs' obligations both to submit to examination under oath as well as to cooperate in giving evidence to State Farm are not contingent on whether Plaintiffs deemed the subject matter of State Farm's inquiry to be relevant or reasonable.   To the contrary, there is no subject matter limitation in the policy language, and the provision requiring Plaintiffs to submit to an examination under oath explicitly provides that *State Farm* in its discretion may request that Plaintiffs submit to an examination under oath. Compliance with this request was not in Plaintiffs' discretion but rather was mandatory. Moreover, the duty to cooperate does not contain language authorizing Plaintiffs to forego cooperation when Plaintiffs deem, in their own estimation, that the subject matter of State Farm's inquiry is irrelevant, duplicative, burdensome, or harassing.   Nor do Plaintiffs cite any authority suggesting that they were not obligated to cooperate with State Farm's requests.   Plaintiffs therefore cannot establish, particularly on these facts, that the State Farm policy excused them

---

[7]   The Court further notes that, with respect to Plaintiffs' contractual duty to submit to examination under oath, although the policy provides that State Farm can request a statement under oath only as "reasonably often" as State Farm requires, State Farm had not made any requests for recorded statements or statements under oath and therefore State Farm could not have exceeded the frequency of requests that might be deemed reasonable.

[8] Not only is the distinction of no import, but there is no evidence before the Court that Plaintiffs ever agreed to appear to give a recorded statement or a statement under oath regardless of the content.   Instead they filed suit.

either from giving evidence to State Farm or from submitting to an examination under oath.

Finally, the Court is not convinced by Plaintiffs' argument that State Farm's request for recorded statements or examination under oath was burdensome, redundant, or unreasonable under the Court's rules governing requests for discovery.  The Court's discovery rules are not relevant to the question whether the contract of insurance to which Plaintiffs agreed required Plaintiffs to give State Farm evidence in the form of their recorded statements or to submit to examinations under oath, and when under Tennessee law the right to examine under a cooperation clause is broader than the right of discovery.  *Shelter*, 656 S.W.2d at 38.

Under the plain language of the State Farm policy, Plaintiffs were required to cooperate with State Farm by, among other things, giving evidence.  This included providing State Farm with a recorded statement and submitting to an examination under oath upon State Farm's request, even if the examination was related to the no contact provision of Plaintiffs' uninsured motorist coverage.  It is undisputed that State Farm requested that Plaintiffs provide a recorded statement and an examination under oath and that Plaintiffs did not provide either.   Failing to do so breached Plaintiffs' contractual duty to cooperate with State Farm.

C.   A Question of Fact Exists Whether Plaintiffs' Breach Substantially Prejudiced State Farm.

Under Tennessee law, an insured's duties to cooperate with its insurer and to submit to examination under oath are conditions precedent to an insured's recovery under the policy.  *Spears*, 300 S.W.3d at 681.  Defendant agrees that if an insured breaches a cooperation or examination clause, this "failure to perform a duty under [the] insurance policy gives rise to a rebuttable presumption that the insurance company has been prejudiced."  *Lester v. Allstate Prop. & Cas. Ins. Co.*, No. 3:12-CV-0299, 2013 WL 3788607, *5 (E.D. Tenn. July 18, 2013), *aff'd*, 743

17

F.3d 469 (6th Cir. 2014).   It is the insured's burden—not the insurer's—to rebut the presumption

of prejudice.   *Lester*, 743 F.3d at 471; *Talley*, 223 F.3d at 328; *Alcazar*, 982 S.W.2d at 856.

To satisfy their burden of rebutting the presumption of prejudice, Plaintiffs point to their

three interviews with State Farm or its agent, Plaintiffs' production of the vehicle insured for

photographing and physical examination, and Plaintiffs' five additional statements to third-parties.

Plaintiffs argue that their refusal to submit to further questioning did not prejudice State Farm

because State Farm "exhaustively interviewed [Ms. Sanchez] on three separate occasions," had the

"benefit of five additional statements rendered in the course of the State's accident investigation

and Plaintiffs' medical treatments," [Doc. 32 at 4], and "was fully apprised of the underlying facts

and permitted the opportunity to conduct a full and independent investigation, which it did through

its New Mexico claims office," [Doc. 32 at 11 (citations omitted)].   Plaintiffs conclude that

because State Farm "had ample evidence of the impact and injuries . . . there is no prejudice."

[Doc. 32 at 5].   State Farm, in contrast, asserts that its investigation was "substantially delayed"

and that it "could not gain the evidence it needed to properly investigate the claim as Plaintiffs

were the only known witnesses to the accident."   [Doc. 28 at 11].

Plaintiffs' failure to cooperate with State Farm deprived State Farm of the opportunity to

inquire about the alleged discrepancy between Sanchez's statement to the police and the physical

evidence, to receive any statement from Lee, and to conduct the further investigation it wished to

pursue.   The court concludes, however, that Plaintiffs have pointed to facts sufficient, at a

minimum, to generate a material dispute on the question whether depriving State Farm of these

investigative opportunities substantially prejudiced State Farm.

Tennessee has explained that "[t]he reason for including a cooperation clause in the policy

and for conducting examinations pursuant to it is . . . [t]he company is entitled to obtain, promptly

18

and while the information is still fresh, all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights to enable them to decide upon their obligations, and to protect them against false claims." *Shelter*, 656 S.W.3d at 38 (citation omitted).   Here, the only two eye-witnesses to the accident—Plaintiffs—are still available. Plaintiffs have established that State Farm received several statements from Plaintiffs within approximately one week of the accident, which suggests that the delay in receiving statements recorded statements or statements under oath did not prejudice State Farm's ability to gather facts while fresh in Plaintiffs' minds.   To the extent State Farm argues that Plaintiffs may have provided different statements under oath than they might have provided in the absence of an oath, delay itself does not render a change in testimony due to the presence of an oath any less likely.   A delay in receiving a statement under oath, thus, does not result in the same type of prejudice as a delay in disclosing witnesses.[9]   In addition, Plaintiffs have presented evidence establishing that State Farm was on notice of the accident from the night it occurred and therefore Plaintiffs' refusal to provide recorded statements did not impede State Farm's ability to inspect the condition of the local where the accident occurred.   Moreover, it is undisputed that State Farm obtained the official medical reports and that a State Farm representative promptly inspected and photographed Plaintiff Sanchez's vehicle.     The Court holds that these facts are sufficient, at a minimum, to generate a question of fact whether State Farm was prejudiced by Plaintiffs' failure to provide recorded statements under oath.

The Court is wholly unconvinced by State Farm's second argument in favor of its claim that Plaintiffs have not satisfied their burden of establishing that State Farm was not prejudiced.

---

[9]   In the latter case, delay impedes the insurer's ability to obtain facts before memories have grown stale; in the former case, delay does not make it any more or less likely that an oath alone will inspire testimony to change.

State Farm asserts that it was prejudiced by Plaintiffs' premature filing of suit and that Plaintiffs have failed to rebut this prejudice. State Farm incorrectly assumes that Plaintiffs were required to demonstrate that State Farm was not prejudiced *by the filing of Plaintiffs' suit*. The prejudice Plaintiffs are required to establish that State Farm did not suffer, however, is prejudice resulting from Plaintiffs' failure to cooperate, and not prejudice arising out of Plaintiffs' act of filing suit.

The Court holds that Plaintiffs have satisfied their burden of generating a question of fact whether State Farm was prejudiced by Plaintiffs' breach of the duty to cooperate. State Farm therefore is not entitled to judgment as a matter of law on the question whether a condition precedent relieved State Farm of its contractual obligations, and the Court thus denies State Farm's motion for summary judgment on Plaintiffs' contractual claims.

III.  State Farm is Entitled to Summary Judgment on Plaintiffs' Bad Faith Claim

State Farm urges the Court to grant summary judgment on Plaintiffs' bad faith claim on the ground that Tennessee law does not recognize the tort of bad faith.[10] State Farm contends that whether Plaintiffs claim sounds in tort or contract, Tennessee law applies. In the alternative,

---

[10] State Farm asserts that it "interprets [Plaintiffs' claims for negligence and fraud] as restatements of Plaintiffs' bad faith claim," [Doc. 28 at 12 n.2], and that, because Tennessee's bad faith statute provides the exclusive remedy in an action between an insured and insurer, Plaintiffs' negligence and fraud claims must be dismissed on the same ground as Plaintiffs' bad faith claims. In its reply, however, State Farm advances substantive arguments related to Plaintiffs' fraud claim and provides citations to authority supporting that claim. [Doc. 35 at 8]. The Court will not consider arguments raised for the first time in a reply brief. *See Mitchell-Carr v. McLendon*, 980 P.2d 65, 73 (N.M. 1999) (stating that appellate courts do not address arguments raised for the first time in a reply brief, unless such arguments are directed to new arguments or authorities presented in the answer brief). Thus, the Court only considers whether State Farm is entitled to summary judgment on Plaintiffs' negligence and fraud claims to the extent Plaintiffs' claims for negligence and fraud are in fact coextensive with Plaintiffs' bad faith claim. On the other hand, to the extent Plaintiffs' claims for negligence and fraud are more expansive than their bad faith claim and/or premised upon a law other than that related to insurance bad faith, the Court does not decide herein whether State Farm is entitled to summary judgment on those aspects of Plaintiffs' negligence and fraud claims.

State Farm argues that, even under New Mexico law, State Farm is entitled to judgment as a matter of law.

While it is true that New Mexico does not adhere to a single definition of bad faith in the context of insurance matters, *cf. Ambassador Ins. Co. v. St. Paul Fire and Marine Ins. Co.*, 690 P.2d 1022, 1025 (N.M. 1984), Plaintiffs' response clarifies that their bad faith claim sounds in tort. Plaintiffs respond that "Defendant's Motion improperly attacks Plaintiffs' bad faith claims, which are based on torts committed in [New Mexico], erroneously asserting that Tennessee law applies to torts committed in the State of New Mexico." [Doc. 32 at 1]   Under New Mexico's choice-of-law rules, in a tort action the location of the last act necessary to complete the injury is the place of the wrong and the law of that place applies.   *Montano v. Frezza*, 352 P.3d 666, 669 (N.M. Ct. App. 2015).

Here, Plaintiffs' bad faith claim rests on allegations largely regarding the resolution of Plaintiffs' claims and the alleged denial of coverage.   Plaintiffs allege that Defendant acted in bad faith in part by "[f]ailing and refusing to promptly and fairly investigate and resolve Plaintiffs' claims," and by "[d]enying insurance coverage as promised." [Doc. 1 at ¶ 55].   It is undisputed that although some of the investigation was conducted in New Mexico where the accident occurred, the claim was otherwise "handled in Tennessee by Tennessee adjustors."[11]   [Doc, 28-2 at

---

[11]  Plaintiffs assert that they "have not had sufficient time to fully discover what specific portions of Plaintiffs' claim was administered by Defendant State Farm's New Mexico (Albuquerque) claims staff, and thus seek[] additional time to conduct written and deposition discovery on this issue."  [Doc. 32 at 8].   To the extent that Plaintiffs request, pursuant to Federal Rule of Civil Procedure 56(d), that the Court defer ruling on State Farm's motion, Plaintiffs have not complied with Rule 56(d)'s requirements and therefore are not entitled to additional time to conduct discovery.   Rule 56(d) requires that a nonmovant must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d), and our Tenth Circuit has held that this affidavit must identify (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these

2, ¶ 5].   Moreover, Plaintiffs do not point to any evidence of tortious conduct by State Farm in New Mexico in the course of the investigation.   The *last acts* then to complete the alleged injury would have occurred in Tennessee where the claim was handled.   For that reason, the Court applies Tennessee law.

    A.  <u>State Farm is Entitled to Judgment as a Matter of Law Because Tennessee does not Recognize the Tort of Bad Faith.</u>

Tennessee law does not recognize the tort of bad faith in an action between an insured and insurer.   *Chandler v. Prudential Ins. Co*., 715 S.W.2d 615, 619 (Tenn. Ct. App. 1986).   Rather, the Tennessee bad faith statute provides the exclusive remedy.   *Id.*   In *Leverette v. Tennessee Farmers Mutual Insurance Co*., No. M2011-00264-COA-R3CV, 2013 WL 817230 (Tenn. Ct. App. Mar. 4, 2013), the plaintiffs failed to assert a bad faith claim under the Tennessee bad faith statute, but rather made a claim for the tort of bad faith.   *Id.* at *17.   The *Leverette* court held that, because Tennessee law does not recognize the "tort of bad faith" in situations that fall within the parameters of the statute, and the bad faith statute provides the exclusive remedy, the plaintiffs' claim for bad faith failed.   *See id.* at *18.

Plaintiffs did not allege a bad faith claim under the Tennessee bad faith statute.   Nor have Plaintiffs argued that their bad faith claim falls outside the parameters of the Tennessee bad faith statute.   The Court therefore concludes that, pursuant to Tennessee law, Plaintiffs' common law bad faith claim fails.   *Cf. id.*

---

facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment, *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000); *see also Valley Forge Ins*., *Co. v. Health Care Mgmt. Partners*, 616 F.3d 1086, 1096 (10th Cir. 2010).   Plaintiffs have not satisfied these requirements, and the Court therefore will not defer its ruling.

B.   The Facts Construed in Plaintiffs' Favor do not Establish that State Farm Committed the Tort of Bad Faith Under New Mexico Law

State Farm argues in the alternative that, even if New Mexico law applies, Plaintiffs failed to identify facts that, if true constitute actionable bad faith in New Mexico.[12]   New Mexico recognizes a tort claim for unreasonable delay or refusal to pay a policy holders claim pursuant to an insurance contract.   N.M. Stat. Ann. UJI 13-1702; *Travelers Ins. Co. v. Montoya*, 90 N.M. 556, 557, 556 P.2d 105 (N.M. Ct. App. 1977); *Chavez v. Chenoweth*, 89 N.M. 423, 553 P.2d 703 (Ct. App. 1976).   "An insurance company acts in bad faith when it refuses to pay a claim of the policyholder for reasons which are frivolous or unfounded."   UJI 13-1702.   The evidence does not show that State farm refused to pay Plaintiffs' claim.   Rather, the evidence shows that in the course of investigating Plaintiffs claim, State Farm repeatedly requested interviews with Plaintiffs over the course of approximately three and a half months following the accident.   The evidence does not show that the claim has not been denied.   [Doc. 28-2 ¶ 15]   To the extent Plaintiffs' argue that State Farm "effectively denied" coverage, [Doc. 32 at 12, fact 24], the evidence does not support this contention.   The Court does not consider a request for a recorded statement or examination under oath, on these facts, akin to an effective denial of coverage.

Plaintiffs facts likewise fail to establish that State Farm delayed paying a claim for "frivolous or unfounded" reasons.   Plaintiffs allege that their bad faith claim rests on State Farm's demand of additional information from Plaintiffs "in hopes of avoiding payment of valid and lawful claims," [Doc. 1 ¶ 24], failure to conduct research and discern that no-contact provisions are unenforceable in New Mexico, [*id.* ¶ 25], failure to make an investigation and compensate Plaintiffs in good faith, [*id.* ¶ 26], and refusal to acknowledge that the terms of the policy provided

---

[12] Although the Court need not consider this argument, it nonetheless holds that Plaintiff' bad faith claim fails on its merits under New Mexico law.

coverage, [*id.* ¶ 55].   The evidence identified by Plaintiffs, however, does not support these allegations but rather establishes that State Farm did not delay paying Plaintiffs' claims for frivolous or unfounded reasons.

First, pursuant to the cooperation clause State Farm had a contractual right to obtain evidence to allow it to determine its obligations under the contract and Plaintiffs had a contractual duty to cooperate with State farm by giving evidence.   Based on these contractual provisions, State Farm's request that Plaintiffs provide a recorded statement or submit to an examination under oath, on these facts, was not unreasonable.

Second, State Farm's conduct of delaying payment of Plaintiffs' uninsured motorist claim while it waited two and one-half months for Plaintiffs to provide recorded statements or to otherwise respond to State Farm's requests for recorded statements, does not constitute a "frivolous" or "unfounded" reason for delaying payment.   To the contrary, the facts establish that State Farm made a prompt and reasonable request that Plaintiffs provide State Farm with recorded statements, and State Farm's first request on January 22, 2014, explicitly informed Plaintiffs that State Farm would need to secure the statement "as part of [its] investigation to determine if this claim qualifies for uninsured motorist coverage."   [Doc. 28-2 at 5].   Despite this knowledge, Plaintiffs nonetheless failed to provide the statements or even respond at all to State Farm.   State Farm promptly sent Plaintiffs' counsel three additional letters requesting recorded statements on January 29, 2014, February 4, 2014, and February 25, 2014.   In the last letter, State Farm notified Plaintiffs that State Farm would require an examination under oath if State Farm did not secure the recorded statements within two weeks.

While State Farm promptly and diligently pursued its investigation of Plaintiffs' uninsured motorist claim, Plaintiffs, in contrast, for two and one-half months wholly ignored State Farm's

attempts to investigate Plaintiffs' claims.  From January 22, 2014, the date of State Farm's first letter requesting recorded statements from Plaintiffs, through April 8, 2014, the day before Plaintiffs notified State Farm that they had filed suit, Plaintiffs did not respond to any of State Farm's letters, contact State Farm regarding the requests for recorded statements, or otherwise attempt to make any effort to cooperate with State Farm's investigation.  It was not until Plaintiffs' counsel sent State Farm a letter dated April 9, 2014, that Plaintiffs even acknowledged State Farm's requests for written statements.  Even then, Plaintiffs' April 9, 2014, letter did not convey cooperation but rather indicated in clear and uncertain terms that Plaintiffs objected to providing recorded statements on topics Plaintiffs deemed, in their sole estimation, unreasonable, and also notified State Farm that Plaintiffs had filed suit.

The Court concludes that, on these facts, any delay in the processing of Plaintiffs' uninsured motorist claim was not attributable to State Farm or to a frivolous or unfounded reason. Instead, the delay in payment was fully attributable to Plaintiffs who refused to cooperate with State Farm's investigation or even to respond to or acknowledge State Farm's requests, despite the fact that State Farm explicitly informed Plaintiffs that it required the recorded statements to complete its investigation.  Moreover, this delay was not attributable to a frivolous or unfounded reason.  State Farm was entitled to investigate Plaintiffs' claim pursuant to the cooperation clause in the contract, Plaintiffs were contractually bound to provide evidence, State Farm had obtained no statement from Lee, and State Farm had not been aware of all of the relevant facts prior to obtaining the three statements from Sanchez and had learned of the discrepancy between Sanchez's statement and the physical evidence only after receiving Sanchez's statements.

While Plaintiffs contend that State Farm's additional investigation was frivolous or unfounded because State Farm was relying upon the heightened evidentiary requirement for

uninsured motorist coverage arising out of claims with no contact between vehicles even though New Mexico does not enforce such provisions, the Court is not convinced.  Even if the Court assumes, consistent with its obligation to construe the facts in Plaintiffs' favor, that State Farm in fact relied upon this provision to delay payment of Plaintiffs' claim, the Court is not persuaded that this reliance rendered the accompanying delay frivolous or unfounded.   While it is against New Mexico public policy to enforce the *complete denial* of uninsured motorist coverage based upon a no contact exclusion, *see Demir*, 140 P.3d at 1116, the provision at issue does not deny coverage for uninsured motorist claims but rather applies a heightened evidentiary standard of review for no-contact claims.  Although this heightened standard may well violate New Mexico public policy, the only issue presently before the Court is whether State Farm delayed payment for a frivolous or unfounded reason.  Conducting an investigation upon the assumption that a heightened evidentiary standard—as opposed to an absolute prohibition on coverage—might withstand scrutiny under New Mexico law was not so unreasonable as to be "frivolous" or "unfounded."

Plaintiffs have not identified facts establishing that State Farm either denied their uninsured motorist claim or delayed payment of their claim for frivolous or unfounded reasons. On these facts, the Court holds that Plaintiffs have failed to substantiate their bad faith claim under New Mexico law, and State Farm therefore is entitled to summary judgment on Plaintiffs' bad faith claim under New Mexico as well as Tennessee law.

IV.   <u>State Farm is Entitled to Summary Judgment on Plaintiffs' Intentional Infliction of Emotional Distress Claim</u>.

State Farm argues that the Court should grant summary judgment on Plaintiffs' intentional infliction of emotional distress claim because, even on Plaintiffs' facts, Plaintiffs did not suffer

"serious mental injury" within the meaning of Tennessee law and State Farm's conduct was not "outrageous." In the alternative, State Farm contends that Plaintiffs' intentional infliction of emotional distress claim cannot survive summary judgment under New Mexico law. Plaintiffs do not respond.

In Tennessee, the elements of intentional infliction of emotional distress are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012) (citations omitted).[13] In New Mexico, a plaintiff must prove that "(1) the conduct in question was extreme and outrageous[,] (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff[,] (3) the plaintiff's mental distress was extreme and severe[,] and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 41 P.3d 333, 342 (N.M. 2002) (internal quotation marks and citation omitted).

While Plaintiffs *allege* that they suffered "severe emotional distress," [Doc. 1 ¶ 79], Plaintiffs' have failed to point to any *evidence* establishing that they suffered "serious" or "extreme and severe" mental "injury" or "distress." *Rogers*, 367 S.W.3d at 205; *Trujillo* 41 P.3d at 342. For this reason alone, Plaintiffs' intentional infliction of emotional distress claim fails under both Tennessee and New Mexico law.

Moreover, Plaintiffs' intentional infliction of emotional distress claim also fails because Plaintiffs' facts, even if true, do not establish that State Farm engaged in conduct that was

---

[13] The Court already has held that Tennessee law applies to Plaintiffs' bad faith tort claims because no wrongful conduct occurred in New Mexico. *See supra* § III.A. This holding applies equally to Plaintiffs' tort claim for intentional infliction of emotional distress. The Court nonetheless considers the viability of Plaintiffs' intentional infliction of emotional distress claim under both Tennessee and New Mexico law.

"outrageous" or "extreme." *Trujillo* 41 P.3d at 342; *Rogers*, 367 S.W.3d at 205. The factual predicate for Plaintiffs' intentional infliction claim is the same as the factual predicate for their bad faith claim, [Doc. 1 ¶ 77], and the Court already has held that these facts do not amount to bad faith. *See supra* § III.B. The Court's reasoning is equally applicable to Plaintiffs' intentional infliction of emotional distress claim. Thus, for the same reasons that the Court held that State Farm did not act in bad faith, the Court also holds that State Farm did not act in an extreme or outrageous manner. Thus, the facts construed in Plaintiffs' favor do not support a claim for intentional infliction of emotional distress under either Tennessee or New Mexico law, and the Court therefore grants State Farm summary judgment on Plaintiffs' intentional infliction of emotional distress claim.

V.      State Farm is Entitled to Summary Judgment on Plaintiffs' UIPA and UPA Claims.

The parties disagree as to whether Tennessee or New Mexico law applies to Plaintiffs' UIPA and UPA claims. The Complaint alleges that State Farm that "in connection with the sale of the Policy . . . [it] knowingly represented that the services being sold were of a particular standard, quality, or grade" and that it "failed to perform in a manner consistent with its representation and contractual obligations." [Doc. 1 ¶¶ 70-72] These allegations underpin Plaintiffs' Unfair Trade Practices Claim. Plaintiffs also allege that Defendant violated New Mexico's Unfair Claims Practices Act by "[f]ailing and refusing to acknowledge that the terms of the Policy applied to the claims submitted by Plaintiffs'," "[f]ailing and refusing to promptly and fairly investigate and resolve Plaintiffs' claims," "denying insurance coverage," "failing to adopt, implement, and maintain reasonable standards for the prompt investigation and processing of Plaintiffs' claims arising out of the policy," and "failing to act in good faith to effectuate prompt, fair, and equitable settlement of Plaintiffs' claims in which liability of a third unknown and

unidentified party was more than reasonably clear."   [Doc. 1 ¶ 63].

Defendant denies the alleged acts occurred, but argues to the extent they did said actions or in actions occurred in Tennessee.  It asserts that because Tennessee does not have a cause of action for violation of New Mexico statutes, the claims must fail.   Despite Defendants statement, Plaintiffs assert that the UPA and UIPA claims "are based in substantial part on acts and omissions committed in the State of New Mexico" and "[t]here seems little disagreement that New Mexico is the 'place where the wrong occurred.'"   [Doc. 32 at 15]   State Farm contends that should the Court analyze Plaintiffs' UIPA and UPA claims under New Mexico law, it is entitled to summary judgment because Plaintiffs have failed to identify facts establishing that State Farm engaged in conduct that violates either statute.

The Court need not determine whether the alleged acts and omissions occurred in New Mexico, Tennessee, or both.  The Court agrees that Plaintiff has failed to identify facts establishing that State Farm's conduct violated either statute.

A.   The Facts Construed in Plaintiffs' Favor Do Not Establish that State Farm Violated the UIPA.

The UIPA prohibits certain enumerated practices by an insurer that are "knowingly committed or performed with such frequency as to indicate a general business practice."   NMSA 1978, § 59A-16-20.  As relevant here, these practices include "failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies," "failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured," "failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies," and "not attempting in good faith to effectuate prompt,

fair and equitable settlements of an insured's claims in which liability has become reasonably clear." § 59A-16-20(B), (C), (D), (E). Plaintiffs have not pointed to facts that, even when construed in Plaintiffs' favor, satisfy these requirements.

First, the evidence does not establish that State Farm's conduct was committed with such frequency as to constitute a "general business practice." § 59A-16-20. Indeed, Plaintiffs have failed to identify any facts demonstrating that State Farm engaged in similar conduct on any other occasion. This failure alone merits denial of Plaintiffs' claim.

Second, State Farm's conduct, even on Plaintiffs' facts, does not fall within one of the proscribed enumerated practices. The evidence does not establish that State Farm failed to acknowledge or act reasonably promptly upon any communication from Plaintiffs. *Cf.* § 59A-16-20(B). To the contrary, State Farm requested promptly, as was its right, a recorded statement from Plaintiffs to investigate their claim, and acted promptly, upon Plaintiffs' failure to respond to State Farm's request, to make three additional written requests for recorded statements.

Moreover, State Farm did not "fail[] to affirm or deny coverage of claims of [Plaintiffs] within a reasonable time," because Plaintiffs had not yet submitted to the requested recorded statement, and thus "proof of loss requirements under the policy ha[d not] been completed and submitted by the insured." *Id.* § 59A-16-20(D). Nor do Plaintiffs' identify any facts that suggest that State Farm failed to implement "reasonable standards" for investigating claims. § 59A-16-20(C). Finally, Plaintiffs' facts to not establish that State Farm failed to attempt in good faith to effectuate settlement once liability had become reasonably clear, because (1) State Farm had not even had the opportunity to investigate the discrepancy in Sanchez's statements, (2) State Farm had not had the opportunity to question Sanchez after receiving all the relevant facts, and (3) State Farm had had no opportunity to question Lee. In the absence of these investigative

opportunities, the Court concludes that liability had not "become reasonably clear." § 59A-16-20(E).

B.    The Facts Construed in Plaintiffs' Favor do Not Establish that State Farm Violated the UPA.

Plaintiffs allege that State Farm violated the UPA by engaging both in unfair or deceptive trade practices and in unconscionable trade practices.    The UPA prohibits both types of conduct. *See* NMSA 1978, § 57-12-3.

> A claim under the UPA has four elements:
>
> First, the complaining party must show that the party charged made an oral or written statement, visual description or other representation that was either false or misleading.    Second, the false or misleading representation must have been knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or . . . collection of debts.    Third, the conduct complained of must have occurred in the regular course of the representer's trade or commerce.    Fourth, the representation must have been of the type that may, tends to or does, deceive or mislead any person."

*Guidance Endodontics, LLC v. Dentsply Intern., Inc.,* 749 F.Supp.2d 1235 (2010) (internal quotation marks omitted) (quoting *Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991).

Plaintiffs allege that State Farm "in connection with the sale of the Policy . . . , knowingly represented that the services being sold were of a particular standard, quality, or grade," [Doc. 1 ¶ 71], and that State Farm "failed to perform in a manner consistent with its representation," [*id.* ¶ 72].    Plaintiffs allege that this conduct violated Section 57-12-2(D)(7) of the UPA, [*id.*], which provides that "representing that goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another" falls within the definition of an "unfair or deceptive trade practice," NMSA 1978, § 57-12-2(D)(7).    The evidence, however, does not establish that State Farm failed to perform in a manner consistent with its representation of

31

coverage or meet the other elements of the claim.   The Court already has held in the context of assessing the viability of Plaintiffs' bad faith claim that, on the facts before it, State Farm neither denied coverage nor unreasonably delayed payment of Plaintiffs' uninsured motorist claim.   *See supra* § III.B.   This holding is fatal to Plaintiffs' claim that State Farm unfairly deceived Plaintiffs by acting in a manner inconsistent with its representation of coverage.   Thus, the Court grants summary judgment in State Farm's favor on this aspect of Plaintiffs' UPA claim.

Plaintiffs also argue that State Farm's same conduct that supported their unfair or deceptive practices UPA claim constitutes an "unconscionable trade practice" within the meaning of Section 57-12-2(E) of the UPA.   [Doc. 1 ¶ 73].   The act defines an "unconscionable trade practice" as "an act or practice in connection with the sale[] . . . , of any goods or services, including services provided by licensed professionals, . . . that to a person's detriment:   (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." § 57-2-2(E). The Court holds, however, that Plaintiffs have failed to identify facts that establish that State Farm engaged in an act that took advantage of Plaintiffs' lack of knowledge, ability, experience, or capacity to a grossly unfair degree or that resulted in a gross disparity between the value received by Plaintiffs by purchasing insurance and the price paid.   The evidence does not establish that State Farm denied coverage or effectively denied coverage to Plaintiffs, and therefore Plaintiffs have not established any disparity—not to mention "gross disparity"—between the value of the insurance they purchased and what they received.   Furthermore, no evidence establishes that State Farm took advantage of Plaintiffs by requesting a recorded statement.   To the contrary, the Court already has explained that requesting a recorded statement was within State Farm's rights and that its exercise of the right was reasonable based upon the disparity between Sanchez's statement and

the physical evidence as well as upon the absence of any statement from Lee and only informal statements by Sanchez prior to State Farm's receipt of the police report and State Farm's awareness of the inconsistency between Sanchez's statement and the physical evidence.   On these facts, the Court holds that State Farm did not take advantage of Plaintiffs.   Thus, Plaintiffs have failed to satisfy their summary judgment burden of identifying evidence that substantiates their UPA claim premised upon an unconscionable trade practice, and the Court therefore grants summary judgment on this aspect of Plaintiffs' UPA claim as well.

VII.   <u>Plaintiffs Motion to Amend is Denied Without Prejudice</u>

In their prayer for relief Plaintiffs write: "Should this Court Determine that Plaintiffs claims under New Mexico's Unfair Trade Practice Act and Unfair Claims Practices Act do not survive, Plaintiff respectfully seeks leave to amend asserting bad faith claims under Tennessee law, including Tennessee Code Annotated section 56-7-105."   To the extent that the language in Plaintiffs' prayer for relief constitutes a motion to amend their complaint, the motion is denied without prejudice.   Any motion to amend the complaint shall be filed in accordance with the rule, and the motion for leave to amend must be filed within seven days of entry of this order.   The Court notes that on the facts before it, it appears that a motion to amend under Tennessee's bad faith statute may well be futile.   To establish a claim under Tenn. Code Ann. Section 56-7-105, a plaintiff must demonstrate "(1) that the insurance policy, by its terms, became due and payable; (2) that a formal demand for payment was made; (3) that [the insured] waited sixty days after making the demand before filing suit; and (4) that [the insurer's] refusal to pay was not in good faith." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 378 (6th Cir. 2007).   This Court has already held that any delay in payment was not for frivolous or unfounded reasons, and thus, at least under New Mexico law, not in bad faith.   Moreover, although Plaintiffs complaint states that Plaintiffs have

made demands for payment, in an affidavit attached to its reply State Farm asserts that no such demand has been made. The Court notes that as that fact was asserted in the reply, Plaintiffs have had no opportunity to respond.   However if no demand, as defined by Tennessee law, has been made, Plaintiffs Tennessee claim for bad faith would not survive. *See Hampton v. Allstate Ins. Co.*, 48 F. Supp. 2d 739 (M.D. Tenn. 1999) (discussing the bad faith statute's formal demand requirement).   Nonetheless, the Court may not have all of the facts before it and has not delved deeply into Tennessee law on this issue.   For these reasons, the Court encourages Plaintiffs to thoroughly research the basis for any Tennessee bad faith claim they may bring prior to seeking to amend their complaint and beware filing a claim that could be found frivolous.

## CONCLUSION

**IT THEREFORE IS ORDERED** that Defendant State Farm's Motion for Summary Judgment, filed January 6, 2015, [Doc. 28], is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)     State Farm's motion is granted on Plaintiffs' extra-contractual claims for bad faith, intentional infliction of emotional distress, and violation of the UIPA and UPA.

(2)     State Farm's motion is denied to the extent it seeks summary judgment on Plaintiffs' contractual claims.


**SO ORDERED** this 20th day of November, 2015.

_____

M. CHRISTINA ARMIJO
Chief United States District Judge